**BROWN, In re, Bankrupt, BLACK, Trustee, Plaintiff, v. AULT et, Defendants.**

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION

No. 66027. Decided September 8, 1949.

Bruce R. Black, Youngstown, Trustee.
Murray A. Nadler, Youngstown, for Trustee.
Richard G. Bauman, Youngstown, for Roy E. Ault.
David Steiner, Youngstown, for Hobart Mfg. Co.
Ralph B. Schwartz, Youngstown, for Bankrupt.

### MEMORANDUM OF REFEREE

By WOODS, Referee.

Bruce R. Black, Trustee of this bankrupt, filed a petition to sell personal property and marshal liens. Bankrupt was in business for himself conducting a meat market in a super market known as "Food Center Super Market", at Cornersburg, Mahoning County, Ohio. To this petition to sell, two creditors filed answers and cross petitions, one claiming a lien on a chattel mortgage and the other on a conditional sales contract.

Roy E. Ault in his answer and cross petition claimed a lien on certain equipment described therein for $3,650.30 upon a chattel mortgage executed September 30, 1948, upon which there was a balance due of $3,344.50. This mortgage was signed, "Food Center Super Market" in typewriter and underneath by pen, "Raymond A. Brown." This mortgage was regularly filed for record in the Chattel Mortgages records of Mahoning County and indexed only under "Food Center Super Market."

Hobart Manufacturing Company filed its answer and cross petition claiming upon a conditional sales contract for a scale, chopper, slicer, and saw, for $2,230.00, credit allowance $507.50, balance due $1,522.50, and after cash payment the contract was executed for $1,482.40, upon which payments were made so that the balance due on bankruptcy was $1,316.40. This conditional sales contract was regularly filed for record with the Recorder of Mahoning County and is under "Food Center Super Market", by pen in print, by "Raymond A. Brown, title owner," and indexed only under "Food Center Super Market."

"Food Center Super Market" was a trade name used by Ronald Brown and D. D. Kothe, a partnership. Raymond A. Brown, the bankrupt, did business individually, operating a meat department in the super market located in Cornersburg, and was not connected with the partnership, being only a tenant of the partnership, and operating independently at the same address.

The question arises as to the validity of the liens as claimed by Ault, the mortgagee under the chattel mortgage, and by Hobart Manufacturing Company, the vendor under the conditional sales contract. The question is presented as to each cross petition, for in the recording in Mahoning County each was indexed as an instrument under "Food Center Super Market", and there was no indexing of Raymond A. Brown as a mortgagor or vendee.

Briefly thus is presented the question concerning the recording of such documents as covered by §8562 **GC** as to filing and indexing chattel mortgages, and by §8569 **GC** as to the officer receiving a conditional sales contract. For each case the provisions of §8562 **GC** control and are as follows:

"The officer receiving such an instrument shall indorse thereon the time of receiving it and its consecutive number, and enter in a book * * * the names of all parties thereto, alphabetically arranged, with * * * its date, the day of filing it, and the amount secured thereby, which entry must be repeated, alphabetically, **under the name of every party thereto** * * *"

Brushing aside arguments about what the intentions of Cross Petitioner Ault were, for he not only represented himself in taking his mortgage but the testimony shows that he had represented the Hobart Manufacturing Company, or what were the intentions of Brown, the bankrupt; the fact is that the documents, while signed by the "Food Center Super Market" by Raymond A. Brown, were left with the recorder and that officer indexed each instrument under "Food Center Super Market." How could any creditor or persons interested by examining such recordings be advised that any liens were claimed on the chattels owned by Raymond A. Brown?

The Trustee in Bankruptcy relies upon Section 70c of the Bankruptcy Act for the nature and basis of his claim to the chattels claimed by each cross petitioner. Section 70 of the Act is called "Title to Property" and the first part of the second sentence under Sec. 70c reads as follows:

"The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists."

This provision confers upon the Trustee "by force of law" the status of the ideal or "perfect" creditor, irreproachable

and without notice armed with every right and power which is conferred by the law of the State upon its most favored creditor. Such hypothetical status depends for meaning upon the substantive law which it does not explicitly indicate, but which it incorporates by reference. Hence the Trustee's powers in every case governed by this portion of Sec. 70c are those which the State Law would allow to a supposed creditor of the bankrupt, who had at the date of bankruptcy completed the process for the perfection of a lien upon property in the bankrupt's or the Court's possession. Whether a Trustee is entitled to such a status, and the conditions under which he may attain it, are federal questions covered by the Bankruptcy Act, but the extent of the trustee's rights, remedies and powers as a lien creditor, are measured by the substantive law of the jurisdiction governing the property in question—that is, in this case the law of the State of Ohio. The foregoing follows a discussion of this subject in Collier on Bankruptcy, 14 Ed., Vol. 4, pg. 1261 et seq. See also Remington on Bankruptcy, Vol. 4, Chap. XXX-A, Sec. 1599-1601.

Since the amendment by the Chandler Act of 1938, this section, which was formerly in Sec. 47c (2), is now recast as a part of Sec. 70c of the Bankruptcy Act, and is sometimes called the "strong arm clause" in Sec. 70c. This right of the trustee in the Bankruptcy Act, as so amended, is discussed in Commercial Credit Company, Inc. v. Davidson, (C. A. 5, 1940) 112 F (2) 54, 42 A. B. R. (n. s.) 688; Janney v. Bell, (4 C. A. 5, 1940) 111 F (2d) 103, 42 A. B. R. (n. s.) 360; Robbins v. Bastian, (C. A. 8, 1943) 135 F (2) 298, 53 A. B. R. (n. s.) 20.

Sec. 70c specifies that the trustee's lien is deemed vested as of the date when the petition in bankruptcy was filed with respect to all property within the scope of its terms. So, generally speaking, liens properly perfected prior to the date of bankruptcy will be superior to that of the trustee under Sec. 70c; those not so perfected or perfected subsequently to bankruptcy will be subordinated thereto, and as Collier adds, it must be constantly borne in mind that this is a matter upon which Sec. 70c normally defers to the State Law, supra, pg. 1270.

Improper or defective recordation is just as ineffective as no recordation at all from the standpoint of constructive notice to third persons; so also defective acknowledgement, lack of required affidavit, recordation in the wrong place, and similar errors, will serve to invalidate the lien against a trustee acting under Sec. 70c. Collier supra, pg. 1292.

There are many cases in the books where the claimed lien is invalid if not recorded in the proper place, or for lack of a required affidavit, and other errors. A case in point, where a chattel mortgage did not bear a date was held invalid against Trustee in Bankruptcy, is In Re: Coast Line Express, Inc., C. C. H. Par. 51660, where the Bankruptcy Court in Massachusetts in 1939 held such mortgage invalid under Sec. 70c of the Bankruptcy Act.

In Ohio where a chattel mortgage failed to recite the residence or place of business of either the mortgagor or the mortgagee, such was held invalid against the mortgagor's trustee in Osborn v. Wells, 69 F (2) 970, when this Referee was affirmed by District Judge West in **The Cleveland Metal Roofing Co., 37 Ohio Law Bulletin 121,** and the Court of Appeals, showing the view the Federal Courts took of failure to comply with Ohio recording statutes.

Early in Ohio it was held that in order to effect a lien, there must be compliance with the provisions of the Recording Acts. Where the statute provided for an affidavit to be written on the mortgage and signed by mortgagee, and the Notary or officer taking the oath failed to sign, it was held that the statute had not been complied with and there was no lien. **Benedict v. Peters, 58 Oh St 527.** In that case Judge Minshall said, at pg. 534:

"Creditors examining the records of such liens are not required to go beyond the record for the purpose of learning whether an instrument on which there is no duly certified sworn statement required by the statute can be shown to have been properly executed in this record."

Since the statutory provisions with reference to execution of a chattel mortgage are intended to protect third persons, including a Trustee in Bankruptcy under Sec. 70c, the chattel mortgage, as against them, must be executed in strict compliance with the statutory requirements. Cash Register Co. v. Friedlander, 7 O. N. P. 170, 4 O. D. (N. P.) 347; Columbus Merchandise Co. v. Kline, 248 Fed. 296.

If a chattel mortgage is executed or filed defectively, the lien of a subsequent execution upon such property is superior to that of such prior mortgage, even though the judgment creditor had notice of such mortgage. **Houk v. Condon, 40 Oh St 569.**

Defect in the form of or omission in the content of an instrument justifies the Court in concluding that the filing of such an imperfect instrument is the legal effect of non-

recordation. Shilling Press, 52 F. Supp. 569, 55 A. B. R. (n. s.) 257; aff. 141 F 2nd 643, 55 A. B. R. (n. s.) 279; Trimmer, Tr. v. Talbot, 36 A. B. R. (n. s.) 84.

The law as it seems to be established in Ohio is clearly discussed in Baker v. Coffman, 24 N. P. (n. s.) 259 (Franklin County Common Pleas 1922) and is applicable here. In that case a mortgagee secured a mortgage signed "Roy Kauffman", whereas the mortgagor's correct name was "Roy Coffman". Later a subsequent mortgagor secured a mortgage on the same property from the same person, but said mortgage was signed by the same mortgagor in his correct name "Roy Coffman." The Court reviewed all of the cases both in Ohio and elsewhere involving this subject, and concluded that there was a dissimilarity in the names of "Kauffman" and "Coffman," and a mortgage executed in the name of "Kauffman," whereas the correct name of the mortgagor was "Coffman," did not convey a valid lien to the mortgagor and allowed priority to the subsequent mortgages whose mortgage was properly signed. The syllabus in said case reads as follows:

Syl. 2. "The dissimilarity in the names of "Coffman" and "Kauffman" is sufficient to give priority to a second chattel mortgage, given under the name of Roy Coffman, which was the real name of the mortgagor over a first mortgage executed under the name of Roy Kauffman, where the holder of the first mortgage made no inquiry as to whether it was signed by the real or known name of the mortgagor, and the holder of the second mortgage had accepted it in good faith without notice."

In arriving at this decision, the court quoted the following authorities:

5 RCL p 393.

"An error in the signature of the mortgage is not fatal as between the parties, but under the secondary statutes it would vitiate the mortgage as to third persons."

11 C. J. 540.

"Likewise by weight of authority, the record of a mortgage executed by the owner in a wrong or fictitious name is not

constructive notice to anyone dealing with the owner in his true name, although the contrary has been held."

In arriving at said decision, Judge Scarlett on page 261 used the following language:

"A mortgagee, who permits the mortgagor to remain in possession of the property mortgaged and thereby makes it possible for the latter to deceive or mislead others by this strongest proof of ownership, must comply with the letter and spirit of the statute. Our Ohio statute is more severe than many, in that it provides that a chattel mortgage, not filed in the manner required by statute, shall be absolutely void as to subsequent purchasers and mortgagees. To validate his mortgage lien, it is the duty of the mortgagee to see that the mortgage is real and not fictitious, that it is signed by the real or known name of the mortgagor, and will give the notice which the statute contemplates."

In modern commercial practice, it is not unusual for large city department stores, like the May Company in Cleveland, to have departments in such stores conducted by individual operators who have concessions from the company to conduct certain businesses. This is probably true in Youngstown, at least that is what Messrs. Ronald Brown and Kothe, a partnership, did, as the "Food Center Super Market", and authorized Raymond A. Brown, this bankrupt, to operate the meat market in their super market. There is no claim here that the partnership is liable for these debts for it is conceded that Raymond A. Brown was not an agent of the partnership.

The case of **Green v. Garrington, 16 Oh St 549,** cited by counsel for Hobart Manufacturing Company is of no help to said cross Petitioner. In that case, the recorder failed to index a mortgage, and the Court held that the remedy of a purchaser who did not find that mortgage in the Recorder's index was against the Recorder. In the case at bar, the Recorder was not at fault, the chattel mortgage and the conditional sales contract were not properly executed by the buyers of the chattels, and the recorder cannot be said to have been at fault, in so indexing the instruments as he did.

Finally, the property covered by the chattel mortgage and the conditional sales contract was the property of Raymond A. Brown, the bankrupt. Neither the mortgagee nor the vendor complied with what seems to be the Ohio law for perfecting a lien upon chattels. "Food Center Super Market"

is not the correct name of the bankrupt and the chattels sought to be covered by liens in each instance are not the property of the "Food Center Super Market." The instruments relied upon in each case are not in compliance with the Ohio statute and no liens are created on said chattel property as against the Trustee of this bankruptcy estate.

In this view of the law applicable to each situation, the liens claimed by the cross petitioners are held to be invalid as against the Trustee in bankruptcy; and orders may be entered denying the liens of each as security, the claim of each cross petitioner be allowed as a general claim, and the Trustee be authorized to proceed with the sale of these chattels.