SCHWARTZ, Appellant,

v.

STEWART TITLE GUARANTY COMPANY, Appellee.

[Cite as *Schwartz v. Stewart Title Guar. Co.* (1999), 134 Ohio App.3d 601.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74450.

Decided July 19, 1999.

602

*Donald P. McFadden* and *Judith L. Layne*, for appellant.

*Hahn, Loeser & Parks, L.L.C., Kim M. Hastings*, for appellee.

JAMES M. PORTER, Administrative Judge.

Plaintiff-appellant Mark C. Schwartz appeals from the summary judgment entered in favor of defendant-appellee Stewart Title Guaranty Company on plaintiff's claim under a title insurance policy for attorney fees resulting from his efforts to cure alleged defects in title to his condominium. Plaintiff contends that undisputed issues of material fact entitled him to coverage and indemnity under the title insurance policy as a matter of law. We find no error and affirm summary judgment in favor of defendant-appellee.

To understand the issues on appeal, it is necessary to outline the substantial background and earlier litigation from which this case arose.

Schwartz purchased an unfinished condominium unit (Unit 306) in the Murray Hill Condominiums in 1989. He customized its interior. Stewart Title issued a standard form policy of title insurance to Schwartz on Unit 306, effective March 2, 1990. When the roof began to leak and the parking garage and swimming pool were not "rehabilitated" as promised by the developers, Schwartz filed a fifteen-count complaint against various parties, including the architect and developer of the condominium (collectively referred to as the Murray Hill Company or "MHC"). See *Schwartz v. Giltz et al.*, C.P. No. 214429, filed on July 15, 1991.

("*Schwartz I*"). That same day, Schwartz sent a letter to Stewart Title giving notice of the suit and claiming a title defect in that, although the record owner of the Murray Hill Condominiums was the Murray Hill Company, an Ohio corporation, the declaration of the condominium listed the owner as the Murray Hill Company, an Ohio general partnership. In an August 22, 1991 follow-up letter, Schwartz also advised Stewart Title that his furnace room encroached into the common area of the condominium.

In *Schwartz I*, Schwartz sought more than two million dollars in compensatory and punitive damages for numerous alleged construction and contract deficiencies. In addition, he sought a declaratory judgment in *Schwartz I* that Unit 306 was not part of a condominium under Ohio law, due to the partnership/corporation name discrepancy, and sought to void the purchase agreement for Unit 306.

Stewart Title engaged coverage counsel to independently assess Schwartz's alleged claims under the title insurance policy. In a letter dated October 17, 1991, Stewart Title responded to Schwartz's claims declining coverage. The letter explained that the policy required Stewart Title to defend only third-party adverse claims against the insured, and that no third party had made an adverse claim affecting title, nor had title been rejected as unmarketable. Further, the letter explained that the indemnity provisions of the policy had not been triggered by actual damage to Schwartz.

Although Stewart Title disclaimed any duty to do so, it undertook to assist MHC in its efforts to cure the partnership/corporation misnomer that Schwartz complained of. To that end, Stewart Title hired attorney Jay Rosenberg, a Cincinnati attorney and title expert, to review the document history for MHC and recommend whether and how the technical name deficiency could be cured. Rosenberg drafted and provided to MHC an affidavit pursuant to R.C. 5301.252, which was executed on November 6, 1992, and filed.

The *Schwartz I* case was tried before a referee in common pleas court. The trial took twenty-one days, presented twenty witnesses and voluminous exhibits, and concluded in November 1993. Stewart Title was not a party. On June 16, 1994, the referee rendered a comprehensive forty-six-page report. Among the findings and conclusions rendered were the following:

"That the 'corporation-partnership' misnomer which created the discrepancy between the Disclosure Statement and the Declaration was nothing more than a simple human error.

"Neither Schwartz nor any of the other unit owners testified to any difficulties with mortgage loans or other financing arrangements arising from an alleged title defect. Title to Unit 306 has never been challenged or questioned by any one other than Schwartz.

"That efforts were undertaken to cure the 'corporation-partnership' misnomer by way of affidavit, which was prepared at the cost and direction of Stewart Title.

"That by Murray Hill Partnership executing a deed to Murray Hill Corporation, it could 'clear any question as to title integrity.'

"That Schwartz's theory that his unit was unmarketable due to the 'corporation-partnership' misnomer was untenable because the defect was curable."

The referee rejected Schwartz's prayer to declare his purchase agreement for Unit 306 voidable. With respect to Schwartz's claim that Unit 306's furnace room encroached upon the condominium's common area, there could be no reimbursement to Schwartz. The referee noted that unanimous owner consent by exchange of quitclaim deeds to the encroachment could cure the problem, but if such consent were not forthcoming, he recommended that MHC redesign Unit 306 to Schwartz's satisfaction. In a journal entry dated September 22, 1995, the trial court adopted the report of the referee and entered orders accordingly.

The parties appealed the *Schwartz I* judgment. The appeal was dismissed when the parties to the MHC lawsuit entered into a settlement agreement. The settlement agreement provided:

"That MHC would pay $550,000 to Schwartz, his attorney, McFadden, and four other unit owners, and an additional $7,000 to Schwartz to be used by him to redesign his unit due to the furnace room encroachment.

"That amendments would be drawn to bring all of the condominium documents in compliance with R.C. Chap. 5311 and specifically R.C. 5311.25, thereby curing alleged title defects.

"That a Motion to Vacate the September 22, 1995 Journal Entry would be submitted which stated that all of Schwartz's claims which were raised, or could have been raised therein, were settled."

On June 14, 1996, Schwartz sold Unit 306 to Robert and Nancy Derwae for $179,000. Chicago Title issued a standard form policy of title insurance to the Derwaes without reservations or exceptions.

On April 4, 1996, Schwartz brought the instant case to recover attorney fees incurred in *Schwartz I* in order to quiet title resulting from the partnership/corporation name discrepancy and the furnace room encroachment. The complaint alleged counts for breach of contract, declaratory judgment, bad faith, and breach of fiduciary duty. Schwartz never clarified on the record whether the approximately $200,000 in fees he sought represented all or only a portion of the fees incurred in *Schwartz I*.

Stewart Title claimed that there were no adverse claims against the title that it was obliged to defend under its policy and plaintiff suffered no injury or loss for

which he was entitled to indemnity. Plaintiff claimed Stewart Title was obligated to pay the legal expense of quieting his own title because Stewart Title failed to honor its commitments under the policy. The trial court found "that no adverse claim to title was made. Therefore under the contract, Defendant did not owe an affirmative duty to the Plaintiff." Summary judgment was granted for Stewart Title and denied for plaintiff. Both parties agree that the case turns on a interpretation of the policy. Both contend that the language of the policy is clear and unambiguous and favors the application for which each contends.

We will address plaintiff's assignments of error in the order presented.

## I

■ "The trial court erred when the trial court granted defendant–appellee title company's motion for summary judgment on plaintiff–appellant's claims one, five and six on the finding that no adverse claim to title was made and that the defendant–appellee title company did not owe an affirmative duty to the plaintiff-appellant insured to cure the plaintiff-appellant insured's unmarketable title which title the title company had insured to be marketable."

■ Under Ohio law, the insured bears the burden of proving both the existence of a loss and coverage under an insurance policy. *Inland Rivers Serv. Corp. v. Hartford Fire Ins.* (1981), 66 Ohio St.2d 32, 34, 20 O.O.3d 20, 21–22, 418 N.E.2d 1381, 1383; *Reverend Ferris E. Kleem v. Nationwide Ins. Co.* (Oct. 6, 1983), Cuyahoga App. No. 46027, unreported, 1983 WL 2622.

■. Appellate review of summary judgments is *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245; *Zemcik v. La Pine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860, 863. The Ohio Supreme Court recently restated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204 :

■■ "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

 Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 140.

Both parties argue that the language of the policy is unambiguous. As we held in *Ins. Co. of N. Am. v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302, 310, 692 N.E.2d 1028, 1033:

 "Generally, insurance contracts must be construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102. Although juries are allowed to determine related factual matters, the interpretation of insurance contracts in the first instance is one of law for the trial court. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159, 1163. Therefore, a court is precluded from rewriting a contract when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous, the court may not resort to construction of the language. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 500, 462 N.E.2d 403, 406–407." See, also, *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686 ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.").

Stewart Title contends that there was no adverse claim by a third party and there was no loss, and, as a matter of law, there was no coverage. Thus, Stewart Title contends that the plain meaning of the policy is that no coverage is provided for an insured's voluntary expenditures for attorney fees in prosecuting the insured's attack on his own title. Therefore, Stewart Title argues that any wounds to Schwartz in the form of attorney fees were self-inflicted, summary judgment against Schwartz was proper, and the trial court's decision should be affirmed in all respects.

Plaintiff, on his part, claims that there is no requirement in the policy that there be an adverse claim clouding title before coverage applies. In short, plaintiff claims that the partnership/corporation name defect and the furnace room encroachment were defects that rendered the title unmarketable and that plaintiff was justified and entitled to indemnity under the policy for attorney fees required by his own action to quiet title. Both parties cite authority from other jurisdictions that supports their arguments. The issue appears to be a novel one under Ohio law.

Because both parties claim the policy is unambiguous in providing/not providing coverage, it behooves us to review closely the terms and conditions of the policy.[1] The insuring agreements on the face of the policy provide:

"SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

"1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

"2. Any defect in or lien or encumbrance on the title;

"3. Unmarketability of the title;

"4. Lack of a right of access to and from the land.

"The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

" * * *

"EXCLUSIONS FROM COVERAGE

"The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorney's fees or expenses which arise by reason of:

" * * *

"3. Defects, liens, encumbrances, adverse claims or other matters: * * * (c) resulting in no loss or damage to the insured claimant."

The conditions and stipulations that applied to the policy contained the following:

"1. DEFINITION OF TERMS

" * * *

"(g) 'unmarketability of the title': an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a

---

1. We do not address the evidentiary effect or value of the Referee's Report (cited frequently by both parties), which made recommendations for a judgment that was subsequently vacated, as the interpretation of the policy is a matter of law. *Nationwide Mut. Fire Ins. Co., supra.*

purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

" * * *

"3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

"The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest, as insured, is rejected as unmarketable. * * *

"4. DEFENSE AND PROSECUTION OF ACTIONS: DUTY OF IN-SURED CLAIMANT TO COOPERATE.

"(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

"(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

" * * *

"7. DETERMINATION, EXTENT OF LIABILITY AND COINSURANCE.

"This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by

reason of matters insured against by this policy and only to the extent herein described.

" * * *

"(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

" * * *

"9. LIMITATION OF LIABILITY.

"(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

" * * *

"(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company."

There was also a special condominium endorsement to the policy that stated:

"The Company hereby insures against loss or damage by reason of:

"(1) The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

"(2) The failure of the documents required by said condominium statutes to comply with the requirements of said statutes to the extent that such failure affects the title to the unit and its common elements.

" * * *

"(6) Any obligation to remove any improvements which exist at date of policy because of any present encroachment or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

" * * *

"This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and prior endorsements, if any, nor does it extend the effective date of the policy and prior endorsements or increase the face amount thereof."

We note at the outset that there is no specific provision of the policy requiring Stewart Title to pay Schwartz's attorney fees incurred without authority from Stewart Title in the suit Schwartz brought against the contractors and developer. Stewart Title did agree to pay "costs, attorneys' fees and expenses incurred in the defense of title, as insured, but only to the extent provided in the Conditions and Stipulations." Two Conditions and Stipulations expressly address the issue of attorney fees and neither covers Schwartz's situation. Policy condition and stipulation 7 provides that "the company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations." Under Section 4 of the Policy Conditions and Stipulations, only fees incurred in the defense of an adverse claim against the insured are covered. Thus, in Condition and Stipulation 4, Stewart Title agreed to defend Schwartz in "litigation in which any third party asserts a claim adverse to title * * * but only as to those stated causes of action alleging a defect, lien, or encumbrance." Condition and Stipulation 4 also clearly states that Stewart Title "will not pay any fees, costs, or expenses incurred by the insured" in matters not covered by the policy. In addition, Section 4 provides that Stewart Title "shall not be liable for and will not pay the fees of any other counsel."

The condominium endorsement to the policy added no coverage with respect to attorney fees, but expressly incorporated all provisions of the policy by stating it "is subject to all of the Policy terms thereto."

In sum, the policy expressly limited the insurer's attorney fee obligation to the payment of fees incurred by counsel selected by the insurer for the defense of a claim made adverse to the title or interest of the insured. The duty to pay legal fees was a product of the duty to defend. *Lusk v. Imperial Cas. & Indemn. Co.* (1992), 78 Ohio App.3d 11, 18, 603 N.E.2d 420, 425.

■ Schwartz essentially concedes that there was no adverse claim against his title.[2] It was Schwartz's attorney who originated the litigation regarding the "partnership-corporation misnomer" discrepancy and the encroachment of Schwartz's unit on condominium common areas.

It is undisputed that Schwartz's fees were incurred to prosecute a case, not to defend one; Schwartz, not Stewart Title, selected the attorney who prosecuted *Schwartz I*. We find that the plain and unambiguous language of the policy herein excludes Schwartz's claims, and that the trial court did not err in granting

---

2. Although Schwartz now argues that other condominium owners made claims as to encroachment that were adverse to him, he did not give Stewart Title notice of such claims, nor did he raise these claims in argument below. Consequently, we will not address them on appeal. *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 679 N.E.2d 706; *Logan & Co., Inc. v. Cities of America, Inc.* (1996), 112 Ohio App.3d 276, 678 N.E.2d 613.

summary judgment for Stewart Title on Schwartz's claims. We are confirmed in this conclusion by the discussion that follows.

In *Manneck v. Lawyers Title Ins. Corp.* (1994), 28 Cal.App.4th 1294, 33 Cal.Rptr.2d 771, the court found the dismissal of an insured's claim against its title insurer proper in a case similar to this one. The Mannecks discovered that the pool and fence of their home encroached on property owned by another party and demanded that their title insurer prosecute an action on their behalf and indemnify them against losses. 28 Cal.App.4th at 1298, 33 Cal.Rptr.2d at 773. When the title insurer denied coverage, plaintiffs sought a declaratory judgment and claimed damages for breach of contract. The court found that the trial court properly entered judgment for the title insurer on the issue of coverage because there was never any actual or even potential challenge to plaintiffs' title. The same result is warranted in this case because Schwartz's own claims of defects did not invoke coverage.

To avoid the policy exclusion for the attorney fees he incurred in *Schwartz I*, Schwartz argues that Stewart Title had a duty to cure the title defects that he alleged in *Schwartz I*. However, no such duty can be found in the policy. As noted above, the policy provides a duty to defend an adverse claim; it also provides a duty to indemnify against specified loss or damage in accordance with the policy terms. There is, however, no duty to cure defects, *per se*, as might be found in a title guaranty. However, the policy is one of indemnity, not guaranty.

Under the policy, whether to take action to cure alleged title defects is a matter committed to the sole discretion of the insurer. Condition and Stipulation 9(a), relied on by Schwartz, explains what happens if Stewart Title exercises this discretionary right, but creates no obligation. That an insurer may take certain action does not mean that it must do so. Cf. *Manneck*, 28 Cal.App.4th at 1301, 33 Cal.Rptr.2d at 775. See, also, *Willow Ridge Ltd. v. Stewart Title Guar. Co.* (S.D.Miss.1988), 706 F.Supp. 477, 483 ("[T]he language of the policy is clear and unambiguous. While a suit to clear title was an option available to Stewart Title, it was an option and nothing more than that."); *Childs v. Mississippi Valley Title Ins. Co.* (Ala.1978), 359 So.2d 1146, 1152 ("without owing a duty to take such affirmative action on this matter, there could be no breach"). In analyzing the insurer's option to establish title under a policy, a leading authority states:

"When an insured title is not the subject of litigation, the insurer has the right to establish the title. The quoted provision above states just this much, but, significantly, no more. The word 'right' is used and might be juxtaposed against other words that the drafter of the policy might have chosen. Read in the context of the whole policy, such a provision as this usually appears in conjunction with the 'duty to defend' provision, so that, in the policy as a whole, this is a right

coupled with a duty." D. Burke, Law of Title Insurance (2 Ed.) Section 12.5, at 12:51.

Although Burke goes on to state that some courts have found that the duty to establish or clear title was mandatory, he notes that this is not the universal view. Given the plain language in the case herein, we find there was no duty to take affirmative action on the part of Stewart Title. To do so would impose a duty where the parties' agreement provided none.

The absence of a title insurer's duty to cure defects, whether or not they are challenged, is underscored by the policy's exclusion of coverage for "defects, liens, encumbrances, adverse claims or other matters resulting in no loss or damage to the insured." Schwartz never claimed loss or damage from the alleged title defects but rather sought to recover fees and expenses that he planned to and later did incur in a case that he initiated. Such fees are clearly not loss or damage under the policy. Under the recognized principle of *expressio unius est exclusio alterius* (mention of one implies exclusion of another), the separate treatment of "loss or damage" and attorney fees and costs throughout the policy, "loss or damage" as stated in the policy, does not contemplate such fees and costs. See *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 166, 646 N.E.2d 485, 488–489.

The principle that title insurance is a contract of indemnity, not a guaranty of the state of title, is not only inherent in the policy here but is recognized generally by the courts in cases involving both owner's and mortgagee's title insurance. *E.g.*, *Chicago Title Ins. Co. v. McDaniel* (Tex.1994), 875 S.W.2d 310, 311; *Udell v. City Title Ins. Co.* (1960), 208 N.Y.S.2d 504, 12 A.D.2d 78; *Sattler v. Philadelphia Title Ins. Co.* (1960), 192 Pa.Super. 337, 342, 162 A.2d 22; *Falmouth Natl. Bank v. Ticor Title Ins. Co.* (C.A.1, 1990), 920 F.2d 1058; *Gibraltar Sav. v. Commonwealth Land Title Ins. Co.* (C.A.8, 1990), 905 F.2d 1203, 1204.

The difference between indemnity and guaranty contracts is that a contract of indemnity "does not guarantee the state of the title, but rather agrees to indemnify the insured for any loss." *Chicago Title Ins. Co. v. Huntington Natl. Bank* (Aug. 25, 1998), Delaware App. No. 98CAE03018, unreported, 1998 WL 548959; Burke, *supra* (2 Ed.) Section 2.1.1, at 2:2. See, also, *Shafron Enterprises Defined Benefit Pension Plan v. Midland Title Security, Inc.* (June 25, 1991), Cuyahoga App. No. 60922, unreported, 1992 WL 146842 (Title guaranty guarantees good title. When defect made known, company must take steps to correct defect.). The purpose of title insurance is to safeguard the transferee of real estate from the possibility of loss through defects that may cloud title. Appleman, Insurance Law and Practice (1981), Section 5201, at 2; *United States v. Flint* (E.D.Mich.1972), 346 F.Supp. 1282, 1285.

To trigger the duty to indemnify, the insured must have a claim asserted against the title by a third party because an "indemnity is a * * * collateral promise to make good a loss or injury suffered by a policyholder in consequence of the act of a third party." Burke, *supra*, Section 2.1.1, at 2:4–2:5. An indemnity contract requires that the insured suffer an actual loss. *Sattler v. Philadelphia Title Ins. Co.* (1960), 192 Pa.Super. 337, 342, 162 A.2d 22, 25; *Chicago Title Ins. Co. v. McDaniel* (Tex.1994), 875 S.W.2d 310, 311; Burke, *supra*, Section 2.1.1, at 2:2–2:3, 2:6 ("Such a loss does not occur when an adverse claim, lien, or encumbrance on title is in existence but remains unasserted."). "The kind of loss contemplated by such policy is that loss or damage sustained when, 'because of a defect in the title, the insured was bound to pay something to make it good.'" *Grunberger v. Iseson* (1980), 75 A.D.2d 329, 332, 429 N.Y.S.2d 209, 211, citing *Empire Dev. Co. v. Title Guar. & Trust Co.* (1918) 225 N.Y. 53, 60, 121 N.E. 468, 470.

In the case herein, we find no loss was actually sustained by the plaintiff. Although the plaintiff argues that his title was made unmarketable because of the defect, this is not a loss suffered by the adverse action or claim asserted by a third party. Without an adverse claim contending that the title is unmarketable, the defendant has no duty to provide the plaintiff's attorney fees and costs.

"The wording is important—the policy's coverage here is not of the marketability of title, but of an *'unmarketable'* one. The negative wording is consistent with the indemnity nature of the policy. To cover marketability of the title insured would be to guarantee the title; to cover its unmarketability is to provide an indemnity against adverse claims asserted against it. A marketable title is one that a vendor, through judicial action, can compel a purchaser to take; an unmarketable title is one that a purchaser, in the course of a transaction, is justified in rejecting at the closing table. Between these two poles, it is possible to find a good title for many purposes, but unmarketable.

" * * *

"Marketability is the grease on the wheels of real property transactions. Its function is to prevent an attorney from 'fly-specking' a title—looking for defects technically valid, but so trivial that they would not affect the value of the property or the acceptability of title." Burke, *supra*, Section 3.2.6, at 3:46–3:47.

We agree with the trial court that there was no duty to defend without an adverse claim. Nor was there a duty to indemnify without actual loss. There was no duty to cure in the absence of an adverse claim as might be appropriate in a title guaranty. In light of the undisputed facts and the plain meaning of the

policy, summary judgment was properly entered by the trial court for the title company and denied the plaintiff.

Plaintiff's Assignment of Error I is overruled.

## II

"The trial court erred when the trial court held plaintiff–appellant's claims two, three and four are moot because there is no case in controversy."

■ The trial court apparently relied on Schwartz's sale of his condominium Unit 306 as its basis for finding moot the second, third, and fourth claims for relief—the declaratory judgment counts.

■ The essential elements for declaratory relief are (1) a real controversy between the parties, (2) that is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Ohio Assn. of Life Underwriters, Inc. v. Duryee* (1994), 95 Ohio App.3d 532, 534, 642 N.E.2d 1145, 1146. See *Burger Brewing Co. v. Ohio Liquor Control Comm., Dept. of Liquor* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261, paragraph one of syllabus; R.C. 2721.02. A declaratory judgment action should be dismissed when (1) there is no controversy or justiciable issue between the parties; or (2) a declaratory judgment will not terminate the uncertainty or the controversy. *Ohio Assn. of Life Underwriters, supra,* at 534, 642 N.E.2d at 1146.

The trial court properly applied these criteria to Schwartz's claims for declaratory judgment against Stewart Title. The second claim for relief was also moot because Schwartz had fully tried the issues of marketability and title defect in *Schwartz I* and settled and released his claims. See *Turner v. Cleveland City School Dist. Bd. of Edn.* (1995), 99 Ohio App.3d 666, 668–669, 651 N.E.2d 511, 512; *Wagner v. Cleveland* (1988), 62 Ohio App.3d 8, 13, 574 N.E.2d 533, 537; *Cincinnati Metro. Hous. Auth. v. Cincinnati Dist. Council No. 51* (1969), 22 Ohio App.2d 39, 42, 51 O.O.2d 45, 46–47, 257 N.E.2d 410, 413 (holding that parties must "possess a legal interest in an actual controversy" or claims are moot).

Plaintiff's Assignment of Error II is overruled.

## III

"The trial court erred when the trial court failed to grant plaintiff–appellant's motion for partial summary judgment on plaintiff–appellant's second claim for relief on the finding that there is no case in controversy."

The trial court's dismissal of the fifth and sixth claims for relief, which alleged bad faith on defendant's part and breach of fiduciary duty, was proper for reasons in addition to the absence of policy coverage for Schwartz's claim due to

the absence of an adverse claim. In regard to the fifth claim for relief, plaintiff's claimed basis for bad faith occurred more than four years before the complaint was filed and the claim is therefore barred by the statute of limitations. See *Sanderson v. Ohio Edison Co., Inc.* (Nov. 1, 1996), Ottawa App. No. OT–96–022, unreported, 1996 WL 629478; *United Dept. Stores Co. No. 1 v. Continental Cas. Co.* (1987), 41 Ohio App.3d 72, 73, 534 N.E.2d 878, 880. Schwartz also failed to establish a genuine issue concerning whether Stewart Title's rejection of his claims lacked reasonable justification. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 555, 644 N.E.2d 397, 400; *Friendly Farms v. Reliance Ins. Co.* (C.A.6, 1996), 79 F.3d 541, 545–546.

 Similarly, summary judgment of the sixth claim for relief was proper because Ohio law does not impose upon an insurer a fiduciary duty with respect to the analysis of claims, absent evidence that the insured placed special trust or confidence in the insured—and there was no such evidence here. See *Nichols v. Chicago Title Ins. Co.* (1995), 107 Ohio App.3d 684, 698, 669 N.E.2d 323, 333 (no fiduciary relationship existed between title company that disbursed loan proceeds and borrower); *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 451, 635 N.E.2d 1326, 1331.

Plaintiff's Assignment of Error III is overruled.

*Judgment affirmed.*

Rocco and Blackmon, JJ., concur.