DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Guarantee Title Trust Co., appeals from the judgment of the Summit County Court of Common Pleas in favor of Appellee, First Merit Bank, N.A. This Court reverses.
 I. {¶ 2} This action arises out of Appellee's claim for loss under a policy of title insurance issued to it by Appellant in a document entitled "Lender's Policy of Title Insurance" ("Lender's Policy"). The policy was issued to Appellee with coverage limits up to $56,000.00 to insure mortgage financing Appellee provided to S. William Webster in the amount of $56,000.00.[1] Mr. Webster used this amount to purchase a home located at 1114 Maryland Ave. S.W., Canton, Ohio.
 {¶ 3} Prior to issuing the Lender's Policy, Appellant had its issuing agent, William Sparks, president of ARTA of Stark County ("ARTA"), prepare a commitment for a loan policy of title insurance. This commitment document was faxed to Appellee's commercial loan officer, Gregory May, on May 31, 2000. The commitment listed the proposed insured as "William S. Webster" for the owner's policy. Prior to closing, Appellee received the settlement statement which listed William S. Webster as the purchaser. In addition, it received the mortgage location survey which similarly showed William S. Webster as the purchaser.
 {¶ 4} The sale of the property closed on June 16, 2000. Mr. Webster signed the mortgage at one of Appellee's branches in Akron on June 16, 2000. The seller separately signed the deed on this date. Mr. Webster then took the signed mortgage and cashier's check issued by Appellee to ARTA. Mr. Webster and the seller separately signed the settlement statement on June 16, 2000. ARTA recorded both the deed and the mortgage on June 19, 2000. Appellant also issued the Lender's Policy on this date.
 {¶ 5} The Lender's Policy insured that Appellee's mortgage on the property was the first and best lien insuring it against loss from "any defect in or lien or encumbrance on the title" and "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title" and "[t]he priority of any lien or encumbrance over the lien of the insured mortgage." The Lender's Policy also stated as follows:
"3. Title to the estate or interest in the land is vested in:
William S. Webster
"4. The insured mortgage and assignments thereof, if any are described as follows:
"Mortgage from William S. Webster, to FirstMerit Bank, N.A., in the amount of $56,000.00, dated June 16, 2000 received for record June 19, 2000 at 2:04 p.m. and recorded in Imaging No. 2000035779 of the Stark County Recorder's Office." (Emphasis added.)
The mortgage deed was prepared by Mr. Sparks. Mr. Sparks drafted the deed in the name of "William S. Webster" which is one of Mr. Webster's various aliases. Appellee, however, drafted the mortgage in the name: "S. William Webster."[2]
 {¶ 6} On May 18, 2001, Mr. Webster sold the property to Michael and Carol Stump. Appellee's prior-existing and recorded mortgage was not detected during the title search as the search was conducted according to the name on the deed, "William S. Webster," instead of the name on the mortgage, "S. William Webster." Therefore, Appellee's mortgage was not paid off in the purchase. Further, Mr. Webster did not use the sale proceeds to pay off Appellee's mortgage, and he subsequently defaulted on the loan. He then filed for bankruptcy.[3]
 {¶ 7} On January 13, 2003, Appellee filed suit against Appellant to recover the loss it suffered as a result of Mr. Webster's default. Appellee alleged two causes of action: (1) a claim for breach of the Lender's Policy Appellant issued to it for Mr. Webster's April 18, 2000 property purchase and (2) a claim for negligence in preparing the deed and Lender's Policy of title insurance.
 {¶ 8} A bench trial was held on September 16, 2004. On September 1, 2005, the trial court entered judgment in favor of Appellee in the amount of $56,000.00 — the policy limits of Appellant's policy — with interest from September 27, 2005. Appellant timely appealed from the trial court's order, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING COVERAGE UNDER A TITLE INSURANCE POLICY WHERE THE PROPOSED INSURED IMPROPERLY PREPARED ITS LIEN, AND WHERE THE POLICY SPECIFICALLY EXCLUDED COVERAGE FOR DEFECTS CREATED BY THE INSURED."
 {¶ 9} In its first assignment of error, Appellant contends that the trial court erred in finding that the Lender's Policy covered Appellee's loss because Appellee improperly prepared its lien and the Lender's Policy specifically excluded coverage for defects created by the insured. We agree.
 {¶ 10} The Supreme Court of Ohio has set out the standard of review for a trial court judgment following a bench trial. According to the Ohio Supreme Court, an appellate court should be "guided by a presumption" that the fact-finder's findings are correct. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 79-80. Under these guidelines, an appellate court should not reverse the trial court's judgment unless it is against the manifest weight of the evidence. Therefore, an appellate court shall not reverse if the judgment is supported by "`some competent, credible evidence going to all the essential elements of the case * * *.'" Id. at 80, quoting C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." (Emphasis sic.) Ohayon v. Safeco Ins. Co. of Illinois (Dec. 22, 1999), 9th Dist. No. 19617, at *2, quoting Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
 {¶ 11} "A title insurance policy is a contract between the insured and insurer." Chicago Title Ins. Co. v. Huntington Natl.Bank (1999), 87 Ohio St.3d 270, 273, citing Ohio Farmers Ins.Co. v. Cochran (1922), 104 Ohio St. 427, paragraph one of the syllabus. Therefore, the construction of an insurance contract is a matter of law and the goal in construing the policy is to determine the parties' intent. Chicago Title Ins. Co.,87 Ohio St.3d at 273. We must examine the policy as a whole, looking for the plain and ordinary meaning of the terms unless another meaning is apparent from the record. Id., citing Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 12} With regard to Appellee's ability to recover under the Lender's Policy, the trial court found that it could recover under the provision that insured it against any loss or damage sustained or incurred by the insured by reason of the "invalidity or unenforceability of the lien of the insured mortgage upon the title." The trial court reasoned that the mortgage was invalid and unenforceable as a result of the variation in the name listed on the deed as compared to the name on the mortgage. The court further stated that "none of the exceptions to the policy are applicable to this loss."
 {¶ 13} Appellant asserts that Mr. Webster was permitted to take title in whatever variation of his name he wanted and that it was Appellee's responsibility, as the lien claimant, to prepare its mortgage so that it reflected the exact manner in which title was held, and that any error or omission in this regard is charged to the lien claimant. Appellant further contends that Appellee created, suffered or assumed any defect in the title when it prepared the mortgage in a manner other than that in which Mr. Webster took title.
 {¶ 14} Ohio law places the burden on the insured to demonstrate both the existence of a loss and coverage under an insurance policy. Chicago Title Ins. Co.,87 Ohio St.3d at 273-274, Schwartz v. Stewart Title Guaranty Co. (1999),134 Ohio App.3d 601, 606. Furthermore, under Ohio law the mortgagee has the duty to confirm the validity of his lien:
"To validate his mortgage lien it is the duty of themortgagee to see that the mortgage is real and not fictitious, that it is signed by the real or known name of the mortgagor, and will give the notice which the statute contemplates." (Emphasis added.) Baker v. Coffman (1922), 24 Ohio N.P. (N.S.) 259, at *2; Brown v. Ault (N.D.Ohio 1949), 56 Ohio Law Abs. 536, *5; See also Waicker v. Banegura (2000), 357 Md. 450, 463, quotingCommonwealth v. Roberts (1958), 392 Pa. 572, 586 ("It is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed.").
 {¶ 15} The Lender's Policy specifically excluded from coverage any "[d]efect, liens, encumbrances, adverse claims, or other matters; (a) created, suffered, assumed or agreed to by the insured claimant[.]" Here, Appellee failed to reconcile the discrepancy between its mortgage and the deed.[4] The deed filed with the Stark County Recorder's office shows that on June 19, 2000, title to the property was recorded under the name William S. Webster. Appellee asserts that title searches are generally conducted according to the title holder's last name and first initial, i.e. "Webster, W."[5] Here, Appellee was clearly on notice that the property was titled under the name "William S. Webster" whereas it had issued the mortgage under the name "S. William Webster." The Lender's Policy, issued to Appellee on June 19, 2000, states that "[t]itle to the land is vested in: `William S. Webster'" and that the title was recorded under the name "William S. Webster" on June 19, 2000 at 2:04 p.m. at the Stark County Recorder's Office. Furthermore, the Lender's Policy includes the imaging number for these documents. Therefore, Appellee could have verified that it had a valid lien on the property by performing a title search on the Stark County Recorder's Office website for the last name "Webster" and the first initial "S" or looking up the imaging number. Despite this notice, Appellee never attempted to verify the title and/or correct either the title or the mortgage documents.
 {¶ 16} Appellee contends that Mr. Webster was required to take title to the property in his legal name. It claims that allowing Mr. Webster to take title in whatever name he wanted would serve to encourage the type of fraud that allegedly occurred in this case. We find this argument undermined by the fact that Mr. Webster's legal name was actually Samuel William Webster, not S. William Webster. Therefore, we find that Appellee did not use Mr. Webster's legal name either and instead used his first initial and middle name. However, we need not weigh in on the proper means of taking title to property. The fact remains that Appellee could have avoided its loss by making certain that the name listed on the deed was exactly the same as the name it recorded on the mortgage. Even if Appellee failed to detect the difference prior to the date the deed was filed, Appellee could have later reconciled these documents if it had merely examined the deed.
 {¶ 17} Moreover, the title commitment ARTA prepared and faxed to Appellee on May 31, 2000 listed "William S. Webster" as the proposed insured. Appellee contends that it had no obligation to comply with the title commitment as it ceased to exist upon issuance of the Lender's Policy. However, Mr. May testified at trial that it would be important for Appellee to follow the requirements of the title commitment in drafting the mortgage. Even if Appellee had no legal obligation to comply with the title commitment and even if the name listed in the title commitment was not proper, Appellee admittedly had notice of the requirements listed in the commitment and acknowledged its obligation to follow such requirements.
 {¶ 18} Upon review, we find that Appellee failed to meet its burden of demonstrating entitlement to coverage under the Lender's Policy. Schwartz, 134 Ohio App.3d at 606. Further, Appellee had the duty to confirm the validity of his lien and failed to do so. Therefore, we find that Appellee "created, suffered, assumed or agreed to" a defect in the title when it failed to reconcile the names listed on the deed and mortgage. We find that the trial court erred as a matter of law in finding that Appellee could recover under the Lender's Policy. Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING 
APPELLANT LIABLE TO [APPELLEE] UNDER THEORIES OF AGENCY AND NEGLIGENCE WHERE THE RELATIONSHIP BETWEEN THE PARTIES WAS LIMITED TO THE TITLE INSURANCE CONTRACT AND THE CONTRACT REQUIRES ONLY A DUTY BY APPELLANT TO INDEMNIFY APPELLEE IN THE EVENT OF THIRD PARTY CLAIMS AGAINST THE TITLE."
 {¶ 19} In its second assignment of error, Appellant contends that the trial court erred as a matter of law in finding it liable under agency and negligence theories. We agree.
 {¶ 20} Here, the trial court found that Mr. Sparks was Appellant's agent and that it was liable for his negligence in failing to conform the deed to the name on the mortgage. Appellant asserts that the contract required only a duty to indemnify Appellee in the event of third party claims against the title. It claims that it had no obligation to indemnify Appellee because Appellee had not alleged that it suffered a loss due to a claim by a third party. Appellant further contends that the trial court erred in finding that Appellee could recover under a negligence claim because the parties' relationship was purely contractual and Appellee's remedies were limited to those provided under the Lender's Policy.
 {¶ 21} Pursuant to the Lender's Policy, Appellant agreed to insure Appellee against loss or damage incurred by Appellee "by reason of * * * "[t]he priority of any lien or encumbrance over the lien of the insured mortgage." The policy's Conditions and Stipulations section describes the insurer's determination and extent of liability in paragraph 7 as "a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy." Pursuant to this provision, Appellant contends that its liability is limited to indemnifying Appellee for losses related only to claims asserted against the title by third parties.
 {¶ 22} The Eighth District Court of Appeals in Schwartz
provided an overview of the law regarding an insurer's duty to indemnify an insured under a title insurance policy:
"The principle that title insurance is a contract of indemnity, not a guaranty of the state of title, is not only inherent in the policy here but is recognized generally by the courts in cases involving both the owner's and the mortgagee's title insurance. * * * To trigger the duty to indemnify, the insured must have a claim asserted against the title by a third party because an `indemnity is a * * * collateral promise to make good a loss or injury suffered by a policyholder in consequence of the act of a third party.' The kind of loss contemplated by such policy is that loss or damage sustained when, `because of a defect in the title, the insured was bound to pay something to make it good.'" (Internal citations omitted.) Schwartz,134 Ohio App.3d at 613-614, quoting D. Burke, Law of Title Insurance (2 Ed.) Section 2.1.1, at 2:4-2:5 and Grunberger v. Iseson (1980),429 N.Y.S.2d 209, 211.
 {¶ 23} Appellee argues that Appellant has mistakenly relied on Schwartz for the proposition that title insurance policies are indemnity agreements. In Schwartz, the Eighth District Court of Appeals found that a condominium owner could not recover attorney fees, which he incurred while attempting to cure alleged defects in his title, from his title insurer. Appellee argues that "Appellant's reliance on Schwartz for the apparent proposition that the coverage exists under the Lender's Policy only in the event of a claim by a third party is meritless." Appellee contends that Schwartz is distinguishable from the within matter because the plaintiff in Schwartz held a buyer's policy of title insurance, not a lender's policy, as in this matter. Appellee provides no further support for this contention. The Eighth District's discussion of law regarding the duty to indemnify under title insurance policies encompasses cases involving both the owner's and the mortgagee's title insurance. Id. at 613. Consequently, we find this law applicable and the decision announced in Schwartz persuasive.
 {¶ 24} Appellee has not alleged that it suffered a loss as a result of a third party's claim against the title such as a claim that a prior mortgage was superior to its mortgage. Rather, Appellee asserted that it suffered damages as a result of the failure to detect its lien on the property. Because Appellee did not suffer a loss as a result of a third party claim, we find that the duty to indemnify was not triggered.
 {¶ 25} Chicago Title Ins. Co., 87 Ohio St.3d 270, provides particular guidance with regard to Appellant's contention that Appellee's negligence claim is barred by the terms of the Lender's Policy. In Chicago Title Ins. Co., Huntington National Bank ("HNB") filed an independent tort claim against Chicago Title, which had issued to HNB a title insurance policy for a mortgage HNB had given to secure a loan. The tort claim was based on Chicago Title's allegedly negligent failure to discover and disclose the existence of a superior mortgage prior to issuing the title insurance policy. The Ohio Supreme Court found that HNB's negligence claim was barred by a merger clause contained in the insurance policy which restricted HNB's claim of loss or damage, including negligence claims, to the policy provisions. The Lender's Policy at issue here contains an identical merger clause in Section 14 of the Conditions and Stipulations portion. This provision states that liability is limited to the policy:
"(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to the policy."
 {¶ 26} We find that this policy language explicitly precludes an independent tort action by Appellee for negligence arising out of preparation of the deed. Appellee is limited to the contractual remedies provided for in the policy. Consequently, the trial court erred in permitting Appellee to recover on its negligence claim. Appellant's second assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT'S FINDING OF FACT THAT `SPARKS HAD IN HIS POSSESSION THE OPEN-END MORTGAGE AT THE TIME HE PREPARED THE TITLE POLICY AND DEED' IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. ITS CONCLUSION OF LAW `. . . THAT IT WAS WITHIN THE CONTROL OF SPARKS AND THAT HE SHOULD HAVE DETERMINED THAT THE NAME ON THE MORTGAGE WAS DIFFERENT FROM THE NAME HE WAS USING TO PREPARE THE DEED' IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} In light of our disposition of Appellant's first and second assignments of error, we need not address Appellant's third assignments of error as it is rendered moot.
 III. {¶ 28} Appellant's first and second assignments of error are sustained. Appellant's third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for entry of judgment consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Boyle, J. Concurs.
[1] Mr. Webster is not a party to this suit.
[2] Mr. Webster's legal name is Samuel William Webster.
[3] Appellee obtained a judgment against Mr. Webster based on his default on the mortgage note. However, Mr. Webster's bankruptcy prevented Appellee from collecting the proceeds on its judgment.
[4] "No one concise rule can be established concerning the status of a misnomer in a judgment lien by looking to the caselaw of our sister states. As one court has said: `There are in the books many cases dealing with judgments against debtors whose names are entered in abbreviated or incorrect forms, but it is difficult, if not impossible, to deduce from them a simple rule which furnishes the key to a ready solution of each and every case.'" Waicker, supra, at 468, quoting Coral Gables v. Kerl
(1939), 334 Pa. 441, 444.
[5] A county recorder's office maintains a complete, accurate and permanent record of every document pertaining to the conveyance and encumbrance of land within the county. Property is indexed with the recorder's office according to the name listed on the title.