[Cite as *Castin, L.L.C. v. First Am. Title Ins. Co.*, 2014-Ohio-476.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

CASTIN, LLC

     Appellant

     v.

FIRST AMERICAN TITLE INS. CO.

     Appellee

C.A. No.     26907

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011 05 2848

DECISION AND JOURNAL ENTRY

Dated: February 12, 2014

MOORE, Presiding Judge.

{¶1} Plaintiff, Castin, LLC ("Castin"), appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In 2001, The Lawson Company d/b/a DairyMart, transferred title to real property to Castin, LLC ("Castin"). In connection with this transfer, First American Title Insurance Company ("First American") issued an Owner Title Insurance Policy to Castin. After the deed was signed and delivered, but prior to recording the deed, the name of the grantor on the first line of the deed, which was typed as "The Lawson Company," was crossed out, and "Lawson Milk Co." was handwritten above the stricken language. (Capitalization omitted.)

{¶3} In 2011, Castin intended to transfer title of the real property to its newly established sister LLC known as BSH Properties, LLC ("BSH"), with Castin retaining ownership of the business located on the property. After this planned transfer, Castin and BSH intended to

obtain a loan from JP Morgan Chase Bank ("Chase") in the amount of approximately $350,000, secured by the real property and the business. However, when preparing the transfer of the real property, Castin first learned of the deed alteration. It then informed Chase to postpone loan proceedings because there was a title issue pertaining to the real property. Based upon Castin's representations to Chase regarding the state of the title, the planned loan never closed.

{¶4} Castin sent written notice of the alteration to First American and requested that it take action to quiet title to the property. However, First American advised Castin that it had decided not to take action because it did "not believe the words added to the deed after its execution and delivery [made] the deed defective." However, First American offered to provide a letter of indemnity to another title insurance company, Chicago Title Insurance Co. ("Chicago Title"), wherein it would have agreed to indemnify Chicago Title in insuring the transfer of the real property from Castin to BSH. Chicago Title agreed to proceed to insure the transfer with this letter of indemnification, but Castin advised Chicago Title not to accept the letter. First American further offered to insure the transfer itself, but Castin declined the offer.

{¶5} In 2011, Castin filed a complaint, and in 2012 filed an amended complaint, against First American for breach of contract and bad faith.[1] Castin alleged that, because of the modification to the deed which had not been cured by First American, it was unable to transfer the property to BSH. Because it could not transfer the property, Castin maintained that it could not close on its loan as it had planned with Chase. Castin alleged damages resulting from its inability to obtain a loan together with attorney fees and costs incurred in its attempt to cure the alleged defect in the deed.

---

[1] The original complaint named several other parties as defendants, including The Lawson Company d/b/a Dairy Mart. However, the amended complaint named only First American and a First American employee as defendants. The trial court later dismissed the complaint against the employee on his motion.

{¶6} In 2012, First American moved for summary judgment. After Castin filed its memorandum in opposition and First American replied, the trial court granted summary judgment to First American and dismissed Castin's complaint. Castin timely appealed from the judgment of the trial court, and it now presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT[.]

{¶7} In its sole assignment of error, Castin argues that the trial court erred in granting summary judgment in favor of First American. We disagree.

{¶8} The trial court determined this matter on summary judgment. We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶9} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).

{¶10} Here, the parties' arguments in support of and against summary judgment essentially focused on two questions of law based upon the undisputed facts set forth in our recitation above. First, the parties disputed whether the modification of the deed resulted in "defective" title. Second, the parties disputed the interpretation of the insurance contract.

**{¶11}** As this Court explained in *First Merit Bank, NA v. Guarantee Title & Trust Co.*, 9th Dist. Summit No. 22894, 2006-Ohio-3333, ¶ 11,

> "A title insurance policy is a contract between the insured and insurer." *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273 (1999), citing *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922), paragraph one of the syllabus. Therefore, the construction of an insurance contract is a matter of law and the goal in construing the policy is to determine the parties' intent. *Chicago Title Ins. Co.*, 87 Ohio St.3d at 273. We must examine the policy as a whole, looking for the plain and ordinary meaning of the terms unless another meaning is apparent from the record. *Id.*, citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

**{¶12}** Here, the policy provides that First American would insure Castin against "loss or damage" incurred by reason of: "1. Title to the estate or interest described in Schedule A being vested other than as stated therein; 2. Any defect in or lien or encumbrance on the title; 3. Unmarketability of the title; 4. Lack of a right of access to and from the land." Section 7 of the "Conditions and Stipulations" portion of the policy, provides:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

**{¶13}** In *First Merit* at ¶ 22-24, we found persuasive the Eighth District's description of indemnity agreements in *Schwartz v. Stewart Title Guar. Co.*, 134 Ohio App.3d 601, 614 (8th Dist.1999). There, the Eighth District explained:

> To trigger the duty to indemnify, the insured must have a claim asserted against the title by a third party because an indemnity is a * * * collateral promise to make good a loss or injury suffered by a policyholder in consequence of the act of a third party. The kind of loss contemplated by such policy is that loss or damage sustained when, because of a defect in the title, the insured was bound to pay something to make it good.

(Internal citations and quotations omitted.) Thus, in order to recover under the policy, which by its own terms is a contract of indemnity, Castin had to suffer loss or damage because of a challenge to the title by a third party. *See Schwartz* at 614. The undisputed facts in this case

establish that no party had made a claim against Castin's title. All of the damages alleged by Castin arose from its own actions in challenging its title, and from its own representations to Chase regarding the state of the title.

{¶14} Despite this fact, Castin maintains that "Section 9 of the Conditions and Stipulations of the policy provides that First American's obligations to Castin, LLC are not fully performed until First American removes the defect 'in a reasonably diligent manner by any method, including litigation and completion of any appeals therefrom.'" However, Section 9 of the Conditions and Stipulations of the policy provides as follows:

> 9. LIMITATION OF LIABILITY.
>
> (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

{¶15} We do not read this provision as requiring First American *to take any action*. Instead, Section 9 defines the circumstances under which First American's duties under the contract *are completed*. Section 4, the Conditions and Stipulations section, provides when First American must take action and when it has discretion to proceed:

> (a) Upon written request by the insured * * *, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.
>
> (b) The Company shall have the right, at its own cost to institute and prosecute any action or proceeding or to do any other act which in its opinion may be

necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy whether or not it shall be liable hereunder, and shall not concede liability or waive any provision of this policy. If the Company shall exercise its rights under the paragraph, it shall do so diligently.

{¶16} Therefore, pursuant to Section 4(b), First American had the discretion to determine whether to take action in the absence of an adverse claim. *See also Schwartz* at ¶ 612 ("[u]nder the policy, whether to take action to cure alleged title defects is a matter committed to the sole discretion of the insurer."). In regard to Section 9(a) of the terms and condition, this provision "explains what happens if [the insurer] exercises this discretionary right, but creates no obligation. That an insurer may take certain action does not mean that it must do so." (Citations omitted.) *Id.* Accordingly, we conclude that Castin's argument that First American was obligated to act under Section 9 of the Conditions and Stipulations lacks merit.

{¶17} The undisputed facts establish that the purported damages Castin suffered were not the result of a third party's adverse claim. Consequently, based upon the plain terms of the policy and the nature of a contract of indemnity, First American was not obligated to take any action in regard to the purported defect. Therefore, the trial court properly granted summary judgment in favor of First American.

III.

{¶18} Accordingly, Castin's sole assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT


WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

MICHAEL J. SIKORA, III and JONI TODD, Attorneys at Law, for Appellee.