[Cite as *Sanzotta v. Devor*, 2023-Ohio-348.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| SEBASTIAN SANZOTTA, | **CASE NO. 2021-L-041** |
| Plaintiff, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| RICHARD DEVOR, JR., et al., | |
| Defendants, | Trial Court No. 2019 CV 001854 |
| SETH CHRISTENSEN, et al., | |
| Defendants-Third Party Plaintiffs-Appellants, | |
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, | |
| Third Party Defendant-Appellee. | |

# O P I N I O N

Decided: February 6, 2023
Judgment: Affirmed

*Stephen G. Thomas*, 85 Skyline Drive, Moreland Hills, OH 44022 (For Defendants-Third Party Plaintiffs-Appellants).

*David L. Van Slyke,* Plunkett & Cooney, PC, 300 East Broad Street, Suite 590, Columbus, OH 43215 (For Third Party Defendant-Appellee).

JOHN J. EKLUND, P.J.

{¶1} Appellants, third-party plaintiffs Seth and Bobbi Christensen, appeal the order of the Lake County Court of Common Pleas granting summary judgment in favor of

appellee, third-party defendant Old Republic National Title Insurance Company ("Old Republic").

{¶2} The Christensens raise five assignments of error contending that the Old Republic had a duty to defend the claims against the Christensens and that the trial court erred in finding no issue of material fact.

{¶3} After a review of the record and applicable caselaw, we find the Christensens' assignments of error to be without merit. While the Christensens argued that the claims against them were covered risks under the policy, none of the claims asserted against them in the underlying complaint were claims that affected title and were therefore not covered under the title insurance policy. Further, Old Republic had no duty to defend these claims merely because Old Republic had agreed to defend a separate cross-claim made against the Christensens. Finally, the claims involved in the underlying complaint related to an easement and the policy expressly excluded coverage for claims arising from it. Thus, the trial court appropriately awarded summary judgment to Old Republic as a matter of law. The judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural History:

{¶4} This appeal stems from a title insurance policy between the Christensens and Old Republic. The trial court found that the policy does not cover the claims on which the Christensens had been sued. It therefore denied the Christensens' summary judgment motion seeking a declaration that the claims were covered and entered judgment for the Old Republic.

2

Case No. 2021-L-041

{¶5} Plaintiff Sebastian Sanzotta owned property on 6035 Collins Road in Mentor, Ohio. 6033 Collins Road holds an easement on Sanzotta's property for driveway access. The responsibility to maintain that easement rested with the owners of 6033 Collins Road. The Christensens bought 6033 Collins Road in 2014. At that time, a concrete driveway, built by the previous owner, was present on the easement. The Christensens bought a title insurance policy from Old Republic at the time they bought the property.

{¶6} In April 2019, Sanzotta notified the Christensens of his nuisance and trespass claims arising from the easement. Sanzotta ordered a survey of the property and notified the Christensens of the results on June 12, 2019. The survey showed that part of the concrete driveway on the easement extended beyond the boundary of the easement and onto Sanzotta's property. On June 21, 2019, the Christensens transferred their property, including the easement, to Richard and Renee Devor. In November 2019, Sanzotta filed a complaint against the Christensens and the Devors alleging "ongoing trespasses and nuisances", and failure "to maintain the Dominant Estate [easement] across Plaintiff's property." Specifically, Sanzotta alleged that improper drainage and grading on the easement and negligent maintenance of the pavement had caused damage to his property. Sanzotta did not sue to quiet title or to terminate the easement.

{¶7} The Devors denied liability and filed a cross-claim against the Christensens seeking indemnification from the Christensens for Sanzotta's claims without articulating the basis for the alleged right to indemnification. The Christensens denied liability and filed a counterclaim against Sanzotta alleging frivolous conduct. The Christensens

3

submitted a claim to Old Republic demanding that Old Republic defend and indemnify them for the claims alleged in the complaint and the cross-claim.

{¶8} Old Republic agreed to defend the Devors' cross-claim against the Christensens. However, Old Republic denied defense of Sanzotta's claims against the Christensens on the grounds that those claims were not covered by the policy's covered risks or were within the insurance policy's exclusions and exceptions from coverage.

{¶9} The Christensens filed a third-party complaint against Old Republic seeking a declaration that they were entitled to insurance coverage for Sanzotta's claims, and a claim for bad faith and attorney fees. Old Republic filed an answer denying the allegations. After discovery, the Christensens moved for Summary Judgment on their declaratory judgment claim against Old Republic. Old Republic opposed the motion and filed a Cross-Motion for Summary Judgment on the third-party complaint for declaratory judgment.

{¶10} The trial court denied the Christensens' Motion for Summary Judgment, granted Old Republic's Cross-Motion for Summary Judgment, and dismissed the entire third-party complaint. The court based its decision on the language of the insurance policy, holding that the policy did not cover claims for failures to maintain easements or for the nuisance and trespasses that Sanzotta had alleged. The Christensens timely filed this appeal.

## Standard of Review:

{¶11} We review decisions awarding summary judgment de novo and independently review the trial court's decision without deference pursuant to the standards in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704,

4

711, 622 N.E.2d 1153 (4th Dist.1993); *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.,* 121 Ohio App.3d 188, 191, 699 N.E.2d 534 (8th Dist.1997).

{¶12} "Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.,* 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial." *Allen v. 5125 Peno*, LLC, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6 (11th Dist.), citing *Dresher* at 292-293.

**Review of Insurance Policies:**

{¶13} A reviewing court generally interprets insurance policies "in accordance with the same rules as other types of contracts." *Columbiana Cty. Bd. of Commrs. v. Nationwide Ins. Co.*, 130 Ohio App.3d 8, 15, 719 N.E.2d 561 (7th Dist.1998), citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). When policy language is doubtful, uncertain, or ambiguous, the language will be construed liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St.3d 34, 38, 508 N.E.2d 949 (1987). This is particularly true in exclusions from liability, which "must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.,* 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1985).

5

**{¶14}** However, when the terms of an insurance policy are "clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. Of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). Therefore, a court may use summary judgment to appropriately resolve insurance policy coverage issues. *Id.*

**{¶15}** To determine whether ambiguities exist, words and phrases in the policy will be given their plain and ordinary meaning absent specific contractual definitions. *Watkins v. Brown*, 97 Ohio App.3d 160, 164, 646 N.E.2d 485 (1994). An insurance company "is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy," and does not fall within an exception to the policy. *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 36, 665 N.E.2d 1115 (1996).

**{¶16}** Whether Old Republic owes the Christensens a duty to defend or indemnify the Christensens for Sanzotta's claims against them turns on the language of the insurance policy in question. (See Appendix, pages 40-41, for relevant contract language.) Summary judgment will be appropriate when there is no genuine issue as to any material fact and when the moving party, Old Republic, is entitled to judgment as a matter of law, even when viewing the evidence most strongly in favor of the Christensens.

**Title Insurance:**

**{¶17}** Ohio Revised Code Chapter 3953 governs title insurance. Section 3953.01(A) defines "title insurance" as:

> insuring, guaranteeing, or indemnifying owners of real property or others interested in real property against loss or damage suffered by reason of liens or encumbrances upon, defect in, or the unmarketability of the title to the real property, guaranteeing,

6

warranting, or otherwise insuring by a title insurance company the correctness of searches relating to the title to real property, or doing any business in substance equivalent to any of the foregoing.

{¶18} Section 3953.01(C) defines a "title insurance company" as any of the following:

> (1) Any domestic title guaranty company and domestic title guarantee and trust company to the extent that they are engaged in the business of title insurance;
>
> (2) Any domestic company organized under this chapter for the purpose of insuring titles to real property;
>
> (3) Any title insurance company organized under the laws of another state or foreign government;
>
> (4) Any domestic or foreign company that has the powers and is authorized to insure titles to real estate within this state on December 12, 1967, and that meets the requirements of this chapter.

{¶19} Section 3953.10 details limitations on title insurance companies and provides:

> Title insurance, except for reinsurance as provided in section 3953.13 of the Revised Code, shall be transacted, underwritten, or issued only by a company organized or admitted for issuance of no other form of insurance in this state. A title insurance company shall not transact any other form of insurance business in this state. No company may be organized or admitted in this state after December 12, 1967, to transact, underwrite, or issue title insurance if it engages in any form of insurance business other than title insurance.

{¶20} Section 3953.10 regulates title insurance companies and limits their ability to issue insurance in the State. This statute reflects a so called "monoline" policy and prohibits title insurance companies from transacting in general casualty insurance. *See Baldwin's Oh. Prac. Real Est*. Section 19:1. Title insurance companies may only insure against loss or damage resulting from "liens or encumbrances upon, defect in, or the

7

unmarketability of the title to the real property, guaranteeing, warranting, or otherwise insuring by a title insurance company the correctness of searches relating to the title to real property, or doing any business in substance equivalent to any of the foregoing." R.C. 3953.01(A).

{¶21} Further, the purpose of title insurance is limited. The "principle that title insurance is a contract of indemnity, not a guaranty of the state of title, is not only inherent in the policy here but is recognized generally by the courts in cases involving both owner's and mortgagee's title insurance." *Schwartz v. Stewart Title Guar. Co.*, 134 Ohio App.3d 601, 613, 731 N.E.2d 1159 (8th Dist.1999). Based upon this principle, "the purpose of title insurance is to safeguard the transferee of real estate from the possibility of loss through defects that may cloud title." *Id.*, citing *Appleman, Insurance Law and Practice* (1981), Section 5201, at 2; *United States v. Flint*, 346 F.Supp. 1282, 1285 (E.D.Mich.1972).

{¶22} Generally, an insurance company has a duty to defend a claim when a "'complaint brings the action within the coverage of the policy * * * regardless of the ultimate outcome of the action or its liability to the insured.'" *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶17, quoting *Motorist Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874 (1973), paragraph two of the syllabus. Further, when "the allegations state a claim that falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action.'" *Id.* at ¶18, quoting *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180, 459 N.E.2d 555 (1984).

8

{¶23} "It is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy." *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34, 418 N.E.2d 1381 (1981). In order to "trigger the duty to indemnify, the insured must have a claim asserted against the title by a third party because an 'indemnity is a * * * collateral promise to make good a loss or injury suffered by a policyholder in consequence of the act of a third party." *Schwartz*, 134 Ohio App.3d at 614, 731 N.E.2d 1159, quoting *B. Burke, Law of Title Insurance* (2 Ed.) Section 2.1.1, at 2:4–2:5. Title insurance contemplates coverage of loss sustained due to defects in the title. *Id.*

### Analysis:

{¶24} The Christensens raise five assignments of error

[1.] The Trial Court Erred in Granting Summary Judgment Because Old Republic Had a Duty to Defend Sanzotta's Claim for Damages from an Encroachment Made During the Term of the Christensens' Ownership of 6033 Collins Road.

[2.] The Trial Court Erred in Granting Summary Judgment Because Old Republic's Agreement to Insure Against an Easement's Encroachment States a Specific Exception to the Generalized Exception in Schedule B of Coverage for a Recorded Easement.

[3.] The Trial Court Erred in Granting Summary Judgment Because Appellants' Remedy on Remand Should Include the Recovery of Attorney Fees Incurred to Defend the Complaint.

[4.] The Trial Court erred in Granting Summary Judgment to Deny a Remedy on Remand that Includes Recovery of Attorney Fees to Litigate the Third-Party Complaint.

[5.] The Trial Court Erred by Granting Summary Judgment on the Basis of Water Diversions, While Coverage for an Encroachment Remained Unresolved.

**Sanzotta's Claims Did Not Constitute a Covered Risk Under the Policy:**

9

{¶25} As a threshold matter, if Sanzotta's claims are not a covered risk arguably subject to coverage under Old Republic's policy, then Old Republic is not required to defend or indemnify the claim. *Anders*, 99 Ohio St.3d 156, 789 N.E.2d 1094, ¶18. The burden rests upon the Christensens to demonstrate coverage under the policy. *Inland Rivers Serv. Corp.* 66 Ohio St.2d at 34, 418 N.E.2d 1381. As noted above, Sanzotta's complaint against the Christensens and the Devors alleged "ongoing trespasses and nuisances", and failure "to maintain the Dominant Estate [easement] across Plaintiff's property." Section 2(c) of Old Republic's policy insures against loss resulting from "[a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title * * *." This, per the policy, means the title to 6033 Collins Road. The policy in Condition 1(g) provides that "the land does not include any property beyond the lines of the area described in Schedule A." Schedule A contains the legal description to 6033 Collins Road. The allegations that Sanzotta asserted against the Christensens are tortious in nature. Although Sanzotta alleges that tortious conduct took place on the "Land" as described in the policy, he does not allege any of that conduct affects the title of 6033 Collins Road. The Christensens argue that Old Republic had a duty to defend and indemnify them against Sanzotta's claims for ongoing trespass, nuisance, and negligent maintenance of the easement on Sanzotta's property which occurred due to the driveway pavement being installed partly outside of the recorded easement. The Christensens' argument is that the concrete driveway beyond the easement and the ongoing drainage and flooding issues were encroachments that are covered under Section 2(c) of the Covered Risk section of Old Republic's Insurance Policy.

Case No. 2021-L-041

**{¶26}** Section 2(c) provides that the policy insures against loss or damage the insureds sustained by reason of "any defect in or lien or encumbrance on the Title" including loss from an "encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land." Under the policy, the term "encroachment" includes "encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

**{¶27}** In *Cherry Hills Farm Court, LLC v. First Am. Title Ins. Co.*, 428 F. Supp.3d 516 (D. Colo. 2019), First American Title Insurance declined to defend or indemnify part of a counterclaim made against Cherry Hills Farm Court. *Id.* Cherry Hills purchased a piece of property and title insurance. The policy limited coverage to "only those stated causes of action alleging matters insured against by this policy." *Id.* at 519. After purchasing the land, Cherry Hills discovered that their neighbor had erected a fence on a piece of disputed property. *Id.* Cherry Hills filed a complaint seeking damages for trespass and a decree quieting title on the disputed portion of property. The neighbor filed a counter claim for adverse possession and for set-off for the improvements it had made. *Id.*

**{¶28}** Cherry Hills made a demand on First American to defend and indemnify for the neighbor's claims. *Id.* First American accepted coverage for the adverse possession counterclaim and agreed to defend it. *Id.* However, First American declined coverage or defense on the monetary set-off counterclaim because it did not allege a title defect. *Id.*

**{¶29}** The court said that the policy covered loss or damage caused by "[a]ny defect in or lien or encumbrance on the title." *Id.* at 520. According to the court, this included an "encroachment, encumbrance, violation, variation, or adverse circumstance

11

affecting the title that would be disclosed by an accurate and complete land survey of the Land." *Id.* This language is identical to the Old Republic policy.

{¶30} The parties disagreed about the meaning of the term "affecting the title." *Id.* at 521. The court explained that the term "implies affecting interest in the property itself." *Id.* The set-off counterclaim was "not an adverse title claim" because it did not "seek interest in the property." *Id.* The court noted that the set-off counterclaim was not a dispute over ownership or possession; rather "it was solely a claim to recover the value" of the trespassory improvements. *Id.* The court offered that the link to the title was no greater than "a tort that occurred on the property. A claim does not affect title merely because it involves the property. * * * Cherry Hills' title to the property would remain unaffected." *Id.* The court further explained that if the set-off claim were construed as a continuing trespass claim that defense would still be properly denied. "[a] continuing trespass is a tort that gives rise to its own cause of action. **A continuing trespass does not in and of itself affect title. It affects title only if it somehow alters interests in the land**." (Internal citation omitted) (Bold added.) *Id.*

{¶31} The dissent acknowledges that *Cherry Hills* contains identical policy language but believes that it is distinct because the claim involved in that case was a set-off counter claim. The dissent recognizes that such a claim is not an adverse title claim or a claim that seeks an interest in the property. However, the dissent is incorrect in saying that Sanzotta "challenged the Christensens' ownership of the encroaching portion of the driveway." Although Sanzotta did not file a set-off claim, he did file a claim in trespass and nuisance, which *Cherry Hills* holds "does not in and of itself affect title." *Id.* The

12

essential question is whether Sanzotta's claim "somehow alters interests in the land." *Id.* It does not.

**{¶32}** Sanzotta did not claim any interest in the Christensens' driveway in his complaint – i.e. he did not challenge the Christensens' ownership or title. Further, Sanzotta did not seek to quiet title – i.e. he did not contend that the Christensens had made a claim or taken action that would be adverse to Sanzotta's ownership or title. The issue of the driveway's encroachment is not particularly in dispute. Instead, the question is whether Sanzotta asserted any claim that that would affect title. He has not.

**{¶33}** The mere claim of an encroachment, without asserting any claim that would affect the title is not sufficient to require Old Republic to defend the claim. Old Republic is not required to defend a tort such as a trespass or personal injury claim despite the possibility that a successful plaintiff could later enforce such a claim through a judgment lien against the property. In property line disputes, a plaintiff may sue in trespass to have the trespassory element removed, may sue to quiet title, or sue for both. Here, Sanzotta only sued in trespass and nuisance and Old Republic "is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy," and does not fall within an exception to the policy. *Gearing,* 76 Ohio St.3d 36.

**{¶34}** In this matter, Old Republic agreed to defend the Devors' cross-claim under Condition 2 of the policy because Old Republic treated the Devors' cross-claim as if it asserted a claim against the Christensens' for "liability by reason of warranties" the Christensens made to the Devors in the transfer of the property. Old Republic sent a letter to the Christensens to this effect, with a reservation of its rights to withdraw defense and

terminate coverage if new information revealed that the Devors' cross-claim was not based upon warranties provided in the transfer of title.

{¶35} However, Old Republic denied defense and indemnification of Sanzotta's claims against the Christensens. Section 2 of the Covered Risk section of the policy provides coverage for loss or damage incurred by reason of any defects in or liens on the title. Liens or encumbrances in title include encroachments on the "Land" and "*affecting the Title*" as defined by Section 2(c). (Emphasis added). As noted above, Condition 1(g) of the policy limits the term "Land" by excluding "any property beyond the lines of the area described in Schedule A" – 6033 Collins Road. Sanzotta's claims for nuisance, trespass and negligent maintenance of the easement were not an "encroachment * * * affecting the Title." This is because Sanzotta's claims do not affect any interest, dispute an interest, seek an interest in, or alter an interest, in the property. *See Cherry Hills, supra*, at 521.

{¶36} For Old Republic to defend or indemnify these claims would be in the nature of casualty insurance because they are tort claims that arise from a physical condition on Sanzotta's land. The claims present here related to physical defects on Sanzotta's land and not "defects that may cloud title" to the Christensens' land as described in the policy. *See Schwartz*, 134 Ohio App.3d at 613; *Cherry Hills, supra*, at 521. The claims, as plead or if proven, are not adverse to the title, instead, they are adverse to the Christensens for the time they allowed the tortious conduct to continue. As *Cherry Hills* instructed, tortious conduct such as a continuing trespass is not a claim that affects title because it does not alter any interests in the land. *Id.*; s*ee also Nevers v. Aetna Ins. Co.,* 14 Wash.App. 906, 546 P.2d 1240 (Wash.App.1976) (Holding that an "all risk" policy with no specific title defect exclusion nevertheless did not provide coverage because a title defect is not a

Case No. 2021-L-041

physical loss or damage.)  This conclusion is consistent with R.C. 3953.10 which requires Old Republic to provide monoline insurance coverage rather than general casualty coverage.

{¶37}  We acknowledge that there are courts in out-of-state jurisdictions that have held that similar encroachments warrant defense or indemnification under title insurance policies. See e.g. *First Am. Title Ins. Co. v. Dahlmann*, 291 Wis.2d 156, 2006 WI 65, 715 N.W.2d 609; *Rackouski v. Dobson*, 261 Ill.App.3d 315, 634 N.E.2d 1229 (Ill.App.1994); *Mc Minn v. Damurjian*, 105 N.J.Super. 132, 251 A.2d 310 (N.J. Super. Ct. Ch. Div.1969). However, these opinions are not compelling in this case because they fail to articulate a basis upon which to say that a tortfeasor's conduct on a plaintiff's property gives rise to a claim under a title insurance policy insuring the tortfeasor's title to their property. None of these cases would suggest, and no Ohio court has held, that Sanzotta's claims were claims that reasonably could affect title or alter an interest in 6033 Collins Road. *See Cherry Hills*, 428 F. Supp.3d at 521.

{¶38}  Therefore, Old Republic properly declined to indemnify or defend the Christensens against the Sanzotta claims because they did not satisfy the terms of the Covered Risks as defined by the policy. The threshold question of whether the policy arguably provides coverage has been answered in the negative and Old Republic is not obligated to defend or indemnify Sanzotta's claims.

**Defense of the Devors' Cross-Claim Does Not Extend Old Republic's Duty to Defend Sanzotta's Claims:**

{¶39}  The Christensens also argue that if the Sanzotta claims were not claims that affected title, Old Republic was still required to defend them. The Devors' cross-claim

15

sought indemnification from the Christensens without stating the legal basis for the claim. Old Republic therefore treated it as if it were based on a breach of warranty that the Christensens made to the Devors upon the sale of the land and defended it under Condition 2 of the policy. While not stated with clarity in their filings, the Christensens seem to reason from the proposition that Old Republic essentially admitted, by defending for the Devors' cross-claim, that it is at least an arguably covered claim.

{¶40} From this, the Christensens argue that since the case includes a covered claim, Old Republic is legally bound to defend/indemnify them against all other claims in the case, by whomever asserted and whether or not they fall within the policy's covered risks. We disagree.

{¶41} The Christensens advance the theory that *Ohio Gov't. Risk Mgmt. Plan v. Harrison,* 115 Ohio St. 3d 241, 2007-Ohio-4948, 874 N.E.2d 115 and *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St. 3d 177, 459 N.E.2d 555 require an insurance company to defend all pending claims so long as coverage exists for any one claim. Under this "in for one in for all" or "complete defense" theory, the Christensens assert that since Old Republic agreed to defend the Devors' indemnification cross-claim, Old Republic is legally, but not contractually, required to defend all remaining claims, including Sanzotta's.

{¶42} However, neither case the Christensens cite addressed title insurance. Instead, both addressed liability insurance policies. As noted above, title insurance is regulated by R.C. Chapter 3953, which requires title insurance companies to be monoline insurers. The differences between title insurance and general liability insurance demands that the "defense duty is likewise specifically limited to claims that are covered by the title

16

policy." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 399, (7th Cir.2014) citing *B.* Burke*, Law of Title Insurance* section 6.03[D] (3d Ed. Supp. 2013).

**{¶43}** Condition 5 of the policy provides pertinent language on this point:

**5. Defense and Prosecution of Actions**

(a) Upon written request by the insured, and subject to the options contained in Section 7 of these Conditions, the Company at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. **This obligation is limited to only those stated causes of action alleging matters insured against by this policy. * * * ** The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(Bold added).

**{¶44}** This language reflects that Old Republic will defend an insured against only those "causes of action" which are "insured against." Thus, if a particular cause of action is not covered, excluded, excepted, or a condition of coverage is not satisfied, then Old Republic does not have a duty to defend the cause of action. In this case, coverage extended to the Devors' cross-claim because the Christensens may have faced liability by reason of a warranty made upon the transfer of the Land.

**{¶45}** The Ohio Supreme Court has addressed the duty to defend claims in separate complaints. The Court said that the insurer's duty to defend all claims is limited to claims within a complaint. *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶13. ("Once an insurer must defend one claim *within a complaint*, it must defend the insured on all the other claims *within the complaint*, even if they bear no relation to the insurance-policy coverage." (Citation omitted.)). (Emphasis

17

added). Although *Sharonville* addressed the responsibility of a liability insurance policy, its holding would nonetheless apply to the facts of this case. In this matter, Old Republic agreed to defend the Christensens on the Devors' cross-claim, but not any claim made in the Sanzotta complaint. Therefore, Old Republic was not defending one claim *within a complaint* while denying defense of another claim *within the same complaint*.

{¶46} It appears that no Ohio case law specifically addresses whether title insurance companies in Ohio must defend all claims even within a complaint when coverage arguably exists for any one claim. However, as noted above, title insurance is regulated by R.C. Chapter 3953, which requires title insurance companies to be monoline insurers. The differences between title insurance and general liability insurance demands that the "defense duty is likewise specifically limited to claims that are covered by the title policy." *Philadelphia Indem.*, *supra*, at 399, citing *B. Burke, Law of Title Insurance* section 6.03[D]); *Accord Lupu v. Loan City, LLC*, 903 F.3d 382 (3d Cir. 2018), *First Federal Sav. and Loan Ass'n of Fargo, N.D. v. Transamerica Title Ins. Co.*, 19 F.3d 528, 530 (10th Cir. 1994), *Cherry Hills Farm Court, LLC v. First Am. Title Ins. Co.,* 428 F.Supp.3d 516, *appeal dismissed,* 2020 WL 3840413 (U.S. Dist. Colo, 2020), *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 740, 985 N.E.2d 823 (Mass. 2013). Therefore, it is an open question in Ohio about whether the clear language of the contract in this case may limit the *Sharonville* holding in the context of title insurance.

{¶47} However, in this case, the Court need not decide whether title insurance companies in Ohio must defend all claims within a complaint when coverage exists for one because those facts are not before us. We merely hold, consistent with *Sharonville*,

18

that a title insurance company has no duty to defend an uncovered claim asserted in a pleading separate from the pleading that asserts a covered claim.

{¶48} Old Republic agreed to defend the Christensens against the Devors' cross-claim, but not any claim made in the Sanzotta complaint. Therefore, Old Republic was not defending one claim *within a complaint* while denying defense of another claim *within the same complaint*. Under Condition 5 of the contract; the *Sharonville* holding, and the legislature's express directive that tile insurers must be "monoline," Old Republic was entitled to deny defense of Sanzotta's claims.

### The Easement Exception Precludes Coverage:

{¶49} The Christensens next argue that Schedule B, paragraph 9 of the insurance policy is subject to multiple interpretations and therefore ambiguous. The language in the policy states that "this policy does not insure against loss or damage * * * which arise by reason of: * * * 9. Easement for Ingress/Egress and Utilities, as recorded as document No. 2005R052126 of Lake County Records."

{¶50} As noted above, Sanzotta's claims against the Christensens are for ongoing trespass, nuisance, and damages from the Christensens' failure to maintain the easement. The Christensens argue that the language in this provision should be read to merely exclude coverage for claims relating to the easement's existence (which are not among Sanzotta's claims). They rely on language in Condition 1(g) of the policy that specifically defines the "Land" as "the area described in Schedule A," which includes the easement. This inclusion, they assert, conflicts with the exception contained in Schedule B, paragraph 9 thereby creating an ambiguity and precluding summary judgment.

19

{¶51} Among Sanzotta's claims, he asserts that the pavement of the driveway tends beyond the bounds of the easement. Therefore, this claim does not solely "arise by reason" of the easement, it arises because portions of the driveway extend outside the boundary of the easement. Moreover, as stated above, the claim itself does not and cannot affect title. With or without the easement exception language, Sanzotta's claim is not a claim affecting title and, therefore, is not a claim that Old Republic has a duty to defend. Because Sanzotta has not asserted a claim to quiet title, terminate the easement, or another claim that would affect the title, the applicability of the easement exception is immaterial.

{¶52} Were we to accept the Christensens' argument about an ambiguity in Schedule B, paragraph 9, it avails nothing because Sanzotta's non-covered claims would not become covered merely because they referenced an easement. Sanzotta did not make any claims against the property, the title, or the validity of the easement.

**Continuation of Coverage Does Not Alter the Policy's Covered Risks:**

{¶53} The Christensens posit that Condition 2 of the policy did not terminate coverage merely because the Christensens conveyed the property to the Devors. Old Republic argues that the policy language in Condition 2 that coverage will continue "only so long as the Insured retains an estate or interest in the land," ended coverage as to any possible Sanzotta claim at the time the Christensen's conveyed the property to the Devors. It is arguable that the policy coverage would continue even after the sale of the property – the undisputed fact is that Sanzotta first asserted his claim while the Christensens still owned 6033 Collins Road. But, this would only matter if Sanzotta had made a claim against the Christensens that affected the insured's title. *See E.g.,*

20

*Hovannisian v. First Am. Title Ins. Co.*, 14 Cal.App.5th 420, 434-435, 221 Cal.Rptr.3d 883 (2017). (Holding that a covered loss occurring during the policy period will continue to be covered but that there is no obligation to pay benefits under a title policy when there is no claim adverse to title.) However, continued coverage is not ultimately at issue here because, as discussed above, none of Sanzotta's claims were claims that would affect title to 6033 Collins Road. Therefore, this component of the Christensens' argument is meritless.

**The Christensens' Remaining Arguments are Without Merit:**

{¶54} Additionally, the Christensens argued for the first time at oral argument that Schedule B, paragraph 2 (cited by both parties in their merit briefs) was deleted from the policy language. Schedule B, paragraph 2 provided that the policy did not insure against loss or damage for "discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records." However, the policy states between paragraphs four and five that "Item Nos. 1-4 are hereby deleted." Old Republic conceded that this language was in fact deleted from the policy language.

{¶55} The more salient question is whether the absence of this section impacts this Court's analysis in any way. The Christensens argue that in the absence of this provision, there is no "survey exception" from coverage under Covered Risk 2(c). However, as discussed above, Sanzotta's claims do not satisfy the threshold definition of a Covered Risk within Section 2(c) of the policy. Therefore, the absence of this exception from coverage is immaterial.

Case No. 2021-L-041

{¶56} Next, the Christensens argue that they are entitled to recover attorney fees incurred defending the complaint and litigating the third-party complaint against Old Republic. These assignments are predicated on this Court overturning the trial court's granting summary judgment in favor of the Old Republic. As this Court is affirming the lower court's decision to grant summary judgment in favor of Old Republic, these arguments are without merit. Similarly, the Christensens' bad faith claim against Old Republic must fail because we have determined that Old Republic properly denied coverage for Sanzotta's claims.

{¶57} For the reasons set forth in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs in judgment only,

MARY JANE TRAPP, J., concurs in judgment only in part and dissents in part with a Concurring/Dissenting Opinion.

_____

MARY JANE TRAPP, J., concurs in judgment only in part and dissents in part with a Concurring/Dissenting Opinion.

{¶58} I respectfully dissent from the majority's determination that Old Republic did not have a duty to defend the Christensens against any of the claims in Mr. Sanzotta's complaint.  For the reasons explained below, Old Republic had a duty to defend the Christensens to the extent that Mr. Sanzotta sought damages against them for the driveway's alleged encroachment onto his property.  While I agree with the majority's disposition of the Christensens' other assignments of error, I do so based on different reasoning.

22

**Duty to Defend**

{¶59} In their first, second, and fifth assignments of error, the Christensens challenge the trial court's determination that Old Republic had no duty to defend them against Mr. Sanzotta's claims.

{¶60} The title policy's defense provision provides, in relevant part, as follows:

{¶61} "Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own costs and without unreasonable delay, *shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy.* The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. *The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.*" (Emphasis added.)

{¶62} The majority appears to conflate an insurer's duty to defend with its duty to indemnify. However, the Supreme Court of Ohio has held that "[a]n insurer's duty to defend is broader than and distinct from its duty to indemnify." *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13.

{¶63} In determining a duty to defend, a court reviews the allegations in the complaint and any allegations arising after the filing of the complaint. *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 178-179, 459 N.E.2d 555 (1984). Where the

23

allegations state a claim that is potentially or arguably within the policy coverage, the insurer must accept the defense of the claim regardless of the ultimate outcome of the action or the insurer's liability to the insured. *Id.* at 179. When "there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept defense of the claim." *Id.* at 180.

{¶64} By contrast, the duty to indemnify arises only if liability in fact exists under the policy. *Chemstress Consultant Co. v. Cincinnati Ins. Co.*, 128 Ohio App.3d 396, 402, 715 N.E.2d 208 (9th Dist.1998).

{¶65} Determining whether Old Republic had a duty to defend the Christensens involves three inquiries: (1) whether Mr. Sanzotta asserted a claim against the Christensens that the policy potentially or arguably covered; (2) whether any of the policy's conditions precluded Old Republic's duty to defend; and (3) whether any of the policy's exceptions precluded Old Republic's duty to defend.

### 1. Covered Risk

{¶66} The first inquiry is whether Mr. Sanzotta asserted a claim against the Christensens that the title policy potentially or arguably covered. This requires a review of the allegations in Mr. Sanzotta's complaint and the relevant policy language.

### The Complaint

{¶67} Mr. Sanzotta's complaint asserted four unlabeled "counts." The majority is correct that, in many portions of his complaint, Mr. Sanzotta alleged physical damage to his property resulting from the Christensens' alleged failure to properly maintain the easement during their period of ownership. However, Mr. Sanzotta's complaint also made numerous references to the driveway's alleged encroachment onto his property.

24

{¶68} Specifically, within four paragraphs of count one, Mr. Sanzotta alleged that the driveway was installed only "partially" within the easement. Within another paragraph in count one, he alleged that "[a] substantial part of the driveway was built outside the aforementioned easement and onto Plaintiff's property without Plaintiff's permission causing an ongoing trespass and nuisance." Mr. Sanzotta attached a survey map as an exhibit to his complaint, which expressly references the driveway's encroachment onto his property. In his prayer for relief, Mr. Sanzotta requested "[a] decree ordering Defendants * * * to remove the trespass 'Encroachment' of Defendant, Richard and Renee Devor's driveway on Plaintiff's property." He further requested compensatory damages for "the continuous nuisance and trespass," including "compensation for loss of use of property."

{¶69} Thus, Mr. Sanzotta's complaint may be reasonably construed as asserting a claim for damages against the Christensens for the driveway's alleged encroachment onto his property.

{¶70} Contrary to the majority's suggestion, the fact that this claim sounds in tort does not necessarily preclude coverage under a title policy. The Supreme Court of Ohio has held that "'[a] common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.'" *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998), quoting *Linley v. DeMoss*, 83 Ohio App.3d 594, 598, 615 N.E.2d 631 (1992). A review of Ohio cases demonstrates that parties commonly file trespass claims in the context of property disputes. *See, e.g., H & S Co., Ltd. v. Aurora*, 11th Dist. Portage No. 2003-P-0104, 2004-Ohio-3507 (trespass claim based on alleged

25

Case No. 2021-L-041

encroachment of gravel driveway); *Caserta v. Connolly*, 6th Dist. Ottawa No. OT-03-004, 2004-Ohio-6001 (trespass claim based on alleged encroachment of shed and concrete base).

## The Title Policy

**{¶71}** Section 2(c) of the title policy "insures * * * against loss or damage * * * sustained or incurred by the Insured by reason of:   * * * [a]ny defect in or lien or encumbrance on the Title.  This Covered Risk includes but is not limited to Insurance against loss from:   * * * [1] Any encroachment, encumbrance, violation, variation, or adverse circumstance [2] affecting the Title [3] that would be disclosed by an accurate and complete land survey of the Land.  The term 'encroachment' includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land."

**{¶72}** The policy in this case is an American Land Title Association ("ALTA") Owner's Policy, which is a standardized form.  The construction and application of this policy language appear to be matters of first impression under Ohio law.  However, persuasive authority from other jurisdictions demonstrates that the quoted provision arguably covered Mr. Sanzotta's encroachment claim against the Christensens.

## Encroachment

**{¶73}** First, the driveway's alleged encroachment onto Mr. Sanzotta's property constitutes an "encroachment."  The policy defines "encroachment" as encompassing "encroachments onto the Land of existing improvements located on adjoining land" as well as "*encroachments of existing improvements located on the Land onto adjoining land.*"  (Emphasis added.)  The policy defines "Land," in relevant part, as "[t]he land

26

described in Schedule A." Schedule A contains the legal descriptions of both 6033 Collins Road and the easement. Mr. Sanzotta alleged that the driveway existed prior to the Christensens' ownership of the easement and that a portion of the driveway encroaches onto his adjacent property.

{¶74} The majority purports to limit coverage based on the policy language stating "[t]he term 'Land' does not include any property beyond the lines of the area described in Schedule A." As one commentator has explained, however, "[t]he purpose of the legal description in a title insurance policy is to identify the *subject* of the insurance * * *; it does not act as an additional exclusion of matters not expressly excluded from the policy's coverage elsewhere." (Emphasis added.) Palomar, *Title Insurance Law*, Section 4:34 (2022 Ed.). *See Denny's v. Security Union Title Ins. Co.*, 71 Wash. App. 194, 859 P.2d 619, 626 (1993) ("[T]he purpose of the legal description in a title insurance policy [is] to identify the land covered, not to limit the protection"); *accord First American Title Ins. Co. v. Dahlmann*, 291 Wis.2d 156, 177, 715 N.W.2d 609 (2006); *Rackouski v. Dobson*, 261 Ill.App.3d 315, 318, 634 N.E.2d 1229 (1994).

{¶75} Here, the subjects of the insurance are 6033 Collins Road and the easement. Construing the term "Land" as the majority does would effectively nullify the policy's express coverage for "encroachments of existing improvements located on the Land onto adjoining land."

**Affecting the Title**

{¶76} Second, the driveway's alleged encroachment onto Mr. Sanzotta's property "affect[s] the Title." The term "title" generally means "[l]egal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such

27

Case No. 2021-L-041

evidence." *Black's Law Dictionary*, title (11th Ed.2019). A "title defect" exists "when an insufficiency exists in the records by which the title is proven, such as a complete break in the chain of title or a deficiency in any instrument therein, whether it relates to the chain of title as a whole or to any particular item therein." Palomar at section 5:5. *See United States v. Flint*, 346 F.Supp. 1282, 1284 (E.D.Mich.1972) ("A defect in ownership or title is said to exist when the aggregate of rights, privileges, and powers known as ownership is subject to the claims of others").

{¶77} Courts often make a distinction between "matters that affect the title to the land" and "matters that affect only the physical condition of the land." (Emphasis added.) Palomar at section 5:5. For example, in *Rood v. Commonwealth Land Title Ins. Co.*, 2007 PA Super 315, 936 A.2d 488 (2007), the court determined that an abandoned septic tank was not a defect, lien, or encumbrance affecting title to the property. *Id.* at ¶ 14. In *Elysian Invest. Group v. Stewart Title Guar. Co.*, 105 Cal.App.4th 315, 129 Cal.Rptr.2d 372 (2002), the court determined that an abatement notice was not a defect in or lien or encumbrance on the title. *Id.* at 321.

{¶78} In *Cherry Hills Farm Court, LLC v. First Am. Title Ins. Co.*, 428 F.Supp.3d 516 (D.Colo.2019), a federal district construed the phrase "affecting the Title" from the same policy at issue in this case. The court determined that a claim "affects the Title," based on the plain meaning of that phrase, where it "seek[s] to determine any right or interest in the property"; "seek[s] to enjoin the use or possession of the property"; or "involve[s] a determination of any rights or liabilities incident to ownership, such as limitations on [an owner's] ability to use the property." *Id.* at 522. Thus, even litigation that does not seek to change ownership in any way can "affect" title. *See id.*

28

{¶79} Courts have determined that the encroachment of an insureds' improvements onto adjacent land constitutes a title defect under a title policy. *See* Palomar at section 5:5. For example, in *Dahlmann*, *supra*, the court found that the encroachment of the insured's parking garage onto adjoining property constituted an "encumbrance on the title." *Id.* at 167. In *Mc Minn v. Damurjian*, 105 N.J. Super. 132, 251 A.2d 310 (1969), the court determined that the encroachment of the insured's walk onto adjoining property, which resulted in the insured's restricted use of the side entrance to their home, constituted a title defect under the title policy and triggered the insurer's duty to defend. *Id.* at 140. In *Rackouski*, *supra*, the court found that the encroachment of the insured's barn building onto adjoining property fell within the title policy's coverage and triggered the insurer's duty to defend. *Id.* at 317.

{¶80} In this case, the policy defines "Title" as "[t]he estate or interest described in Schedule A." Schedule A, in turn, describes 6033 Collins Road and the easement. Mr. Sanzotta alleged that part of the driveway improvement was built outside of the easement and onto his adjacent property without his permission. Resolving Mr. Sanzotta's encroachment claim would necessarily require a review of the easement's legal description and a determination as to whether the driveway improvement actually encroaches onto Mr. Sanzotta's property. This is because "a cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing." *H & S Co., Ltd.*, *supra*, at ¶ 10. Therefore, the driveway's alleged encroachment onto Mr. Sanzotta's property "affects" the Christensens' title to the easement.

Case No. 2021-L-041

**{¶81}** Old Republic and the majority rely on *Cherry Hills Farm* in support of their contention that Mr. Sanzotta's claims do not "affect[] the Title." However, the issue in *Cherry Hills Farm* was whether a party's set-off counterclaim seeking damages against an insured for the cost of the party's encroaching improvements "affect[ed] the Title." *Id.* at 521. The court determined that the set-off counterclaim did not "affect[] the Title" because it was not "an adverse title claim"; it did not "seek interest in the property"; and "[t]here was no dispute over ownership or possession." *Id.* Rather, "it was solely a claim to recover the value of the [counterclaimant's] admittedly trespassory improvements" and was "akin to an unjust enrichment claim." *Id.*

**{¶82}** Here, Mr. Sanzotta did not assert a set-off claim against the Christensens; he alleged that their driveway improvement encroached onto his property. Mr. Sanzotta sought removal of the allegedly encroaching driveway and compensatory damages against the Christensens for their "trespass." Therefore, *Cherry Hills Farm* does not support the majority's position.

### Disclosed on a Survey

**{¶83}** Third and finally, the driveway's alleged encroachment onto Mr. Sanzotta's property "would be disclosed by an accurate and complete land survey of the Land." Mr. Sanzotta attached a survey map to his complaint that purportedly depicts the driveway's encroachment onto his property.

**{¶84}** Accordingly, Mr. Sanzotta's encroachment claim against the Christensens arguably or potentially constituted a "Covered Risk" under the policy.

### 2. Conditions to Coverage

30

{¶85} The second inquiry is whether any of the policy's conditions precluded Old Republic's duty to defend. Relevant here is the policy's "Continuation of Insurance" provision, which states, in relevant part:

{¶86} "The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title."

{¶87} Old Republic denied the Christensens' request for a defense based on the foregoing provision, stating that its duty to defend terminated on the date the Christensens conveyed the property to the Devors.

{¶88} According to one commentator, "[o]ne of the biggest 'Gotcha's' in title insurance today is insurers' application of the policy's 'continuation of insurance' provision to terminate, not only future policy coverage, but *pre-existing claims*." (Emphasis added.) *Palomar*, *supra*, at Section 8:22.

{¶89} The Fourth Circuit Court of Appeals' decision in *Chicago Title Ins. Co. v. 100 Invest. Ltd. Partnership*, 355 F.3d 759 (4th Cir.2004), illustrates a "pre-existing claim." In that case, a property owner sued an insured for trespass in 2002 relating to the time period from 1986 to 1995 when the insured purported to own the property. *Id.* at 762. The insured tendered the claim to its title insurer to defend it in the trespass litigation. *Id.* The insurer denied the request, stating that the insured's coverage ended when it conveyed the property in 1995. *Id.*

31

**{¶90}** The court held that the insurer had a duty to defend the claim, explaining as follows:

**{¶91}** "There is no language in the policy identifying it as a 'claims-made' policy, covering an insured only for claims that are asserted during the policy period. To the contrary, the language of the policy does not refer to claims, but rather to loss or damage. The insuring language provides that Chicago Title 'insures, as of [December 18, 1986], against *loss or damage* ... which [the insured] may become obligated to pay hereunder' (emphasis added). The policy, rather than providing insurance for any 'claim' asserted during the policy period, provides that it covers any 'loss or damage' during the policy period. In this case, the policy period for the [insured property] was from December 18, 1986 until July 7, 1995, and the loss or damage alleged in the [trespass] litigation occurred during that period." *Id.* at 766.

**{¶92}** Several courts have adopted the Fourth Circuit's reasoning, holding that as long as the insured held title at the time of the loss or damage, the insured's subsequent transfer of title does not terminate its pre-existing claim. *See*, *e.g.*, *Centennial Dev. Group, LLC v. Lawyer's Title Ins. Corp.*, 233 Ariz. 147,152, 310 P.3d 23 (2013); *Security Title Guar. Corp. of Baltimore v. 915 Decatur St NW, LLC*, 427 F.Supp.3d 1, 11-12 (D.D.C.2020); *Keys v. Chicago Title Ins. Co.*, 2012 WL 4510471, *7 (S.D.Miss.2012); *M & I Marshall & Isley Bank v. Wright*, 2011 WL 181292, *3 (D.Ariz.2011); *First Am. Title Ins. Co. v. 273 Water Street, LLC*, 157 Conn. App. 23, 36, 117 A.3d 857 (2015).

**{¶93}** The Christensens allegedly incurred "loss or damage" during the period of time that they owned 6033 Collins Road and the easement. Therefore, the policy's "Continuation of Insurance" provision did not preclude Old Republic's duty to defend.

32

### 3. Exceptions from Coverage

{¶94} The third inquiry is whether any exceptions in the policy precluded Old Republic's duty to defend.

{¶95} The Supreme Court of Ohio has held that "a defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it." *Continental Ins. Co. v. Louis Marx Co.*, 64 Ohio St.2d 399, 401, 415 N.E.2d 315 (1980).

{¶96} The court has further held that "[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that *that which is not clearly excluded from the operation of such contract is included in the operation thereof.*'" (Emphasis added.) *Moorman v. Prudential Ins. Co. of Am.*, 4 Ohio St.3d 20, 22, 445 N.E.2d 1122 (1983), quoting *Home Indemnity Co. v. Plymouth*, 146 Ohio St.3d 96, 64 N.E.2d 248 (1945), paragraph two of the syllabus. "In other words, the insurer, being the one who selects the language, must be *specific* in its use, and an exclusion from liability must be *clear and exact* in order to be given effect." (Emphasis added.) *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 174, 239 N.E.2d 33 (1968).

{¶97} Here, Schedule B of the policy lists several exceptions from coverage. Exception 2, which is known as a "survey exception," excepts coverage for "loss or damage * * * which arise by reason of: * * * "[d]iscrepancies, conflicts in boundary lines, shortage in area, *encroachments*, or any other facts which a correct survey would disclose, and which are not shown by public records." (Emphasis added.)

Case No. 2021-L-041

{¶98} Crucially, Schedule B states that exceptions 1 through 4 "are hereby deleted." Courts have recognized that "when an insurer expressly waives exceptions to coverage for encroachments, the logical conclusion is that coverage is available for encroachments." *Dahlmann*, *supra*, at 175; *see Rackouski*, *supra*, at 317; *Denny's*, *supra*, at 207. As the *Dahlmann* court aptly explained:

{¶99} "Ordinarily, the existence of the Survey exception and the Encroachment exception in Schedule B make it clear that the risk insured against is limited to the risk of a defect in the chain of title or some other recorded encumbrance on the title. When these exceptions are present, a title insurer should only be liable for defects in the record of the title. *Absent these exceptions or other applicable exclusions, however, it would seem that coverage extends to any discrepancy between the record of title and the physical reality of the corresponding property*." (Emphasis added.) *Dahlmann* at 175.

{¶100} Thus, by deleting exception 2, Old Republic assumed the risk that it would be providing coverage for an unrecorded encroachment. *See id.* at 173.

{¶101} Despite the deletion of exception 2, however, Old Republic contends, and the majority agrees, that its duty to defend was precluded by exception 9, which excepts coverage for "loss or damage * * * which arise by reason of:

{¶102} "9. Easement for Ingress/Easement and Utilities, as recorded as Document No. 2005R052126 of Lake County Records.

{¶103} "a. Recital of Easement, as recorded as Document No. 2009R025923 of Lake County Records."

{¶104} Exception 9 excepts loss or damage arising out of the easement. It does not clearly and unambiguously except loss or damage arising out of an existing

34

improvement to the easement or the existing improvement's unrecorded encroachment onto adjoining property. While exception 2 would have precluded coverage, it was deleted. Therefore, exception 9 did not preclude Old Republic's duty to defend.

{¶105} Based on the allegations in Mr. Sanzotta's complaint, the policy language, and applicable principles of title insurance law, Old Republic had a duty to defend the Christensens against Mr. Sanzotta's claim for damages resulting from the driveway's alleged encroachment onto his property. Accordingly, I would sustain the Christensens' first, second, and fifth assignments of error to the extent discussed above.

### Scope of Duty to Defend

{¶106} Within their fifth assignment of error, the Christensens also address the scope of Old Republic's duty to defend.

{¶107} The majority characterizes the Christensens' argument as follows: Since Old Republic agreed to defend the Christensens against the Devors' cross-claim, Old Republic also had a duty to defend them against all of the claims in Mr. Sanzotta's complaint. The majority concludes that a title insurer "has no duty to defend an uncovered claim asserted in a pleading separate from the pleading that asserts a covered claim."

{¶108} I agree with the majority's disposition but based on different reasoning. Contrary to the majority's characterization, the Christensens actually argue that since Old Republic had a duty to defend them against Mr. Sanzotta's encroachment claim, Old Republic's duty to defend extended to all of Mr. Sanzotta's claims.

{¶109} The Christensens' argument has support under Ohio case law. In *Sharonville*, *supra*, the Supreme Court of Ohio held that "[o]nce an insurer must defend

35

Case No. 2021-L-041

one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Id.* at ¶ 13.

{¶110} However, *Sharonville* involved a liability insurance policy, not a title insurance policy. *See id.* at ¶ 4. As the majority accurately notes, Ohio law prohibits title insurance companies from issuing any other forms of insurance. *See* R.C. 3953.10. In addition, the policy in this case expressly limits Old Republic's duty to defend to "only those stated causes of action alleging matters insured against by this policy."

{¶111} Courts in other jurisdictions have determined that this type of "in for one, in for all" or "complete defense" rule is not applicable in the context of title insurance. *See*, *e.g.*, *Lupu v. Loan City, LLC*, 903 F.3d 382, 394 (3d Cir.2018); *Cherry Hills Farm*, *supra*, at 522-525 (collecting cases). I would find *Sharonville* to be distinguishable and would hold that Old Republic's duty to defend did not extend to the other claims in Mr. Sanzotta's complaint. Accordingly, I would overrule the remainder of the Christensens' fifth assignment of error on the foregoing basis.

### Damages

{¶112} In their third assignment of error, the Christensens contend that their damages on remand should include the attorney fees they incurred to defend against Mr. Sanzotta's complaint.

{¶113} The majority concludes that the Christensens' argument is without merit because Old Republic had no duty to defend.

{¶114} In my view, Old Republic had a duty to defend the Christensens against Mr. Sanzotta's encroachment claim. However, since the trial court determined that Old Republic had no duty to defend, it necessarily did not address the Christensens' alleged

36

damages. Accordingly, I would dismiss the Christensens' third assignment of error as unripe for review.

### Bad Faith

{¶115} Finally, in their fourth assignment of error, the Christensens contend that the trial court erred in granting summary judgment to Old Republic on their bad faith claim. As a result, they contend that their damages on remand should include the costs they incurred to prosecute their third-party complaint against Old Republic.

{¶116} The majority concludes that the Christensens' bad faith claim "must fail" because Old Republic "properly denied coverage for [Mr.] Sanzotta's claims." I agree with the majority's disposition but based on different reasoning.

{¶117} The Supreme Court of Ohio has held that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus.

{¶118} In *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936 (1992), the Supreme Court of Ohio set forth the proper summary-judgment analysis for a bad-faith claim:

{¶119} "[T]o grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that *the claim was*

37

*fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. * * * To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim.*" (Emphasis added.) *Id.* at 630; *see also Vogias v. Ohio Farmers Ins. Co.*, 177 Ohio App.3d 391, 2008-Ohio-3605, 894 N.E.2d 1265, ¶ 40-41 (11th Dist.).

{¶120} In support of its motion for summary judgment, Old Republic attached an affidavit from Christina M. Snow. Ms. Snow averred that she was Old Republic's claims counsel and was assigned to the Christensens' title claim. She investigated the Christensens' claim based on the allegations in Mr. Sanzotta's complaint, the Devors' cross-claim, their respective attachments, and the title policy. Based on those materials, she concluded that the policy only covered the Devors' cross-claim and not Mr. Sanzotta's complaint. She further averred that she investigated the Christensens' claim "in good faith," that she provided a "reasonable justification" for her denial of a portion of their claim, and that she did not reach her conclusion in an "arbitrary or capricious manner."

{¶121} The trial court determined that by providing Ms. Snow's affidavit, Old Republic met its burden on summary judgment to demonstrate the absence of a genuine issue of material fact as to the Christensens' bad faith claim. It further determined that the Christensens failed to meet their reciprocal burden because they offered no evidence and only argument.

38

{¶122} The Christensens do not contend that they met their reciprocal burden. Rather, they argue that Old Republic failed to meet its initial burden. According to the Christensens, Ms. Snow's affidavit was insufficient because she failed to "particularize" her investigation or its "results." I disagree.

{¶123} Ms. Snow's affidavit indicates that her "investigation" consisted of her review of the materials that are applicable in determining whether an insurer has a duty to defend, i.e., the complaint and the policy language. The "results" of her investigation consisted of her conclusions that the policy covered the Devors' cross-claim but not Mr. Sanzotta's complaint.

{¶124} In my view, Old Republic's coverage determinations were partially erroneous. However, this court has recognized that "[a]n improper legal analysis * * * which results in a contractual breach does not, standing alone, establish bad faith." *Coy v. Grange Mut. Cas. Co.*, 11th Dist. Ashtabula No. 2003-A-0108, 2004-Ohio-6955, ¶ 47. Ms. Snow's affidavit establishes that Old Republic's coverage determinations were "premised on * * * the facts that gave rise to the claim," which constitutes a "reasonable justification." *Tokles* at 630. Therefore, the trial court properly determined that Old Republic satisfied its initial burden on summary judgment.

{¶125} Accordingly, I would overrule the Christensens' fourth assignment of error on the foregoing basis.

**Conclusion**

{¶126} In sum, I would find merit to the Christensens' first, second, and fifth assignments of error (duty to defend) to the extent discussed above; overrule the remainder of their fifth assignment of error (scope of duty to defend); dismiss their third

39

assignment of error (damages on remand) as unripe; and overrule their fourth assignment of error (bad faith). Thus, I would affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

## Appendix

The insurance policy at issue here reads in relevant part:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, OLD REBPUBLIC NATIONAL TITLE INSURANCE COMPANY * * * insures * * * against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

* * *

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:

* * *

(c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "Encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

* * *

**CONDITIONS**

**1. DEFINITION OF TERMS**

* * *

(g) "Land": the land described in schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A.

* * *

**2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or

40

holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

\* \* \*

**5. Defense and Prosecution of Actions**

(a) Upon written request by the insured, and subject to the options contained in Section 7 of these Conditions, the Company at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. \* \* \* The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

\* \* \*

**SCHEDULE B EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

\* \* \*

2. discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

\* \* \*

Item Nos. 1-4 are hereby deleted

\* \* \*

9. Easement for Ingress/Egress and Utilities, as recorded as Document No 2005R052126

of Lake County Records.

41

Case No. 2021-L-041